UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

THE STATE OF LOUISIANA,
by and through its Attorney General,
LIZ MURRILL; and NANCY LANDRY, Louisiana
Secretary of State,

PLAINTIFFS,

v.

THE UNITED STATES ELECTION ASSISTANCE
COMMISSION; and BRIANNA SCHLETZ, in her
official capacity as the Executive Director of
the United States Election Assistance
Commission,

DEFENDANTS.

Civ. No. _____

**COMPLAINT**

1.      Our Constitution gives the sovereign states the authority to establish voter qualifications for federal elections. U.S. Const. art. I, § 2, cl. 1 (House); *accord* U.S. Const. amend. XVII (Senate); *cf.* U.S. Const. art. II, § 1, cl. 2 (President). Pursuant to its constitutional authority, Louisiana amended its laws to ensure that those who register to vote provide information sufficient to ensure that they are United States citizens.

2.      A federal agency, however—Defendant United States Election Assistance Commission ("EAC")—barred Louisiana from implementing its law. According to the EAC, Louisiana failed to prove that it was "necessary" for Louisiana to adopt and implement its law.

3.      This lawsuit under the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511, and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA"), challenges that unlawful agency action as, among other things, arbitrary and capricious. This lawsuit also challenges

1

as unconstitutional the provisions in the NVRA purporting to give the EAC this review authority. On any and all such grounds, Plaintiffs State of Louisiana and Nancy Landry request a declaration that the EAC's action is unlawful, vacatur of such action, and an injunction against the EAC's effort to foreclose the implementation of Louisiana law.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1346(a), 1361, 2201, 2202 because this action against a United States agency and officer in her official capacity raises federal questions under the APA, 5 U.S.C. §§ 553, 701–06, the NVRA, 52 U.S.C. §§ 20501–20511, the Help America Vote Act ("HAVA"), including the EAC's enabling statutes, 52 U.S.C. §§ 20901–21145, and the United States Constitution.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because the defendants are a federal agency and officer in her official capacity, Plaintiff Louisiana resides in this district, and no real property is involved in this case.

6.     Plaintiffs' requested relief is specifically authorized pursuant to 5 U.S.C. §§ 704 and 706 (review and vacatur of final agency action), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (further relief), 28 U.S.C. § 2412 (costs and fees), and this Court's inherent equitable powers. *See Louisiana v. Biden*, 622 F. Supp. 3d 267, 288 (W.D. La. 2022); *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689–91 (1949).

## PARTIES

7.     Plaintiff State of Louisiana is a sovereign State of the United States of America, and Liz Murrill, as the duly elected Attorney General and chief legal officer of the State of Louisiana, has the authority to institute, prosecute, or intervene in any civil action or proceeding as necessary for the assertion or protection of any right or interest of the State. La. Const. art. IV, § 8. Her offices are

located at 1885 North Third Street, Baton Rouge, Louisiana 70802. Louisiana sues to vindicate its sovereign, quasi-sovereign, and proprietary interests.

8. Plaintiff Nancy Landry is the Secretary of State for the State of Louisiana. Pursuant to Article IV, Section 7 of the Louisiana Constitution and Louisiana Revised Statute 18:421, the Secretary of State is the chief election officer of the State and the designated chief State election official for purposes of the NVRA. Secretary Landry administers voter registration laws and coordinates the responsibilities of Louisiana under the NVRA. La. R.S. 18:18. The Secretary of State is also the executive head of the Department of State and represents the public interest in the administration of the Department. La. R.S. 36:741–42.

9. Defendant United States Election Assistance Commission ("EAC") is an agency of the United States, established under federal law, 52 U.S.C. §§ 20921–20930, and is an "agency" as that term is defined in the APA, 5 U.S.C. § 551(1). Pursuant to the NVRA, the EAC is required to develop the Federal Form, in consultation with the chief election officers of the States, for the registration of voters for elections for federal office. 52 U.S.C. § 20508(a)(2).

10. Defendant Brianna Schletz is the Executive Director of the EAC and is named as party in her official capacity.

## FACTUAL BACKGROUND

11. The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof." U.S. Const. art. I, § 4, cl. 1. The Elections Clause also authorizes Congress to make or alter States' election regulations through the establishment of uniform rules for federal elections, binding on the States. *Foster v. Love*, 522 U.S. 67, 69 (1997).

12. But determining voter qualifications "forms no part of the power to be conferred upon the national government" by the Elections Clause. *Arizona v. Inter Tribal Council of Ariz., Inc. (ITCA)*,

570 U.S. 1, 17 (2013). That is the province of the States under the House Qualifications Clause (and its Senate counterpart), which provides that "the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. I, § 2, cl. 1; *accord* U.S. Const. amend. XVII (Senate); *cf.* U.S. Const. art. II, § 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct," presidential electors.).

13.    In 1993, Congress enacted the NVRA, 52 U.S.C. §§ 20501–11, to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "enhance the participation of eligible citizens as voters in elections for federal office," and "protect the integrity of the electoral process." § 20501(b)(1), (3). The NVRA establishes a baseline set of voter registration procedures for federal elections that every state must implement, in addition to "any other method of voter registration provided for under State law." *Id.* § 20503(a). The NVRA was originally administered by the Federal Election Commission ("FEC").

14.    In 2002, Congress enacted HAVA, 42 U.S.C. § 15301–15545 (subsequently transferred to 52 U.S.C. §§ 20901–21145), to address improvements to voting systems and voter access, and in doing so, created the EAC, §§ 20921–30, an agency of the United States consisting of four members. HAVA transferred the responsibility of administering the NVRA, including the maintenance of the Federal Form, from the FEC to the newly created EAC. §§ 20508(a), 20922.

15.    The NVRA establishes standard national procedures for voter registration for federal elections, which require States to permit prospective voters to register to vote in federal elections by any of three methods: simultaneously with a driver's license application, by mail, or in person. 52 U.S.C. § 20503(a). These three methods of voter registration for federal elections are "in addition to any other method of voter registration provided for under State law." *Id.*

16.    The NVRA requires States to establish procedures for registering to vote in federal elections by mail application and to "accept and use" the standard Federal Form. § 20505(a)(1).

Section 20505(a)(2) also authorizes states to develop and use a mail voter registration form (the "State Form") that meets the criteria stated in Section 20508(b) for the registration of voters in federal elections. Under this framework, prospective voters can choose a "simple means of registering to vote in federal elections" through the Federal Form or choose the State Form, which can "require information the Federal Form does not." *ITCA*, 570 U.S. at 12.

17.    The NVRA sets the baseline requirements for the content in the Federal Form, including that the Form shall include a statement that specifies each eligibility requirement (including citizenship); contains an attestation that the applicant meets each such requirement; and requires the signature of the applicant, under penalty of perjury. 52 U.S.C. § 20508(b)(2). The NVRA does not include a specific prohibition on the inclusion of any additional information except that the Federal Form "may not include any requirement for notarization or other formal authentication," § 20508(b)(3), and "may only include such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process," § 20508(b)(1).

18.    The EAC has limited rulemaking authority except, in consultation with the chief election officers of the States, to develop the Federal Form and to prescribe regulations necessary to develop the Federal Form. §§ 20929, 20508(a).

19.    The original Federal Form was promulgated through the FEC's rulemaking authority and took effect on July 25, 1994. *See* 59 Fed. Reg. 32309 (June 23, 1994). The current Federal Form includes an application, general instructions for completing the application, and accompanying State-specific instructions. 11 C.F.R. § 9428.3. A copy of the Federal Form is attached hereto as Exhibit 1 and is incorporated herein by reference.[1]

---

[1] U.S. Election Assistance Comm'n, *National Mail Voter Registration Form for U.S. Citizens*, https://perma.cc/36ZH-V777.

20.     When the NVRA was enacted, Congress required chief state election officials to certify to the Commission certain information, including: voter registration eligibility requirements with corresponding state constitution or statutory citations; any voter identification number required or requested; whether the State requires or requests a declaration of race/ethnicity; the State's deadline for accepting voter registration applications; and the state election office address where the application is to be mailed. 11 C.F.R. § 9428.6. The NVRA also requires chief state election officials to notify the EAC, in writing, within 30 days of any change to the State's voter eligibility requirements or other information reported under Section 9428.6. *Id.*

21.     When a State changes its voter eligibility requirements and determines that additional information from voter registration applicants is necessary to enable state election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process, the State may request that the EAC modify the state-specific instructions of the Federal Form to reflect the respective voter qualifications and registration laws of the State. If the changes comport with and are not in conflict with the NVRA, the EAC must develop the change as a proposed rule, comply with the APA's notice and comment requirements, and consult with the chief election officers of the States regarding the proposed changes to the Federal Form. 52 U.S.C. § 20508(a)(2).

22.     Section 20928 of the HAVA requires certain actions by the EAC to be carried out only with the approval of at least three of its members. The Supreme Court has interpreted this provision to require EAC approval of each state-specific instruction before it is included on the Federal Form. *ITCA*, 570 U.S. at 6.

### LOUISIANA'S VOTER REGISTRATION LAWS

23.     Since Louisiana became a State in 1812, eligibility to vote in any election has been conditioned upon United States citizenship. La. Const. art. I, § 10; La. R.S. 18:102(A)(3).

24. Since 1994, Louisiana law has allowed individuals to register to vote in person or by mail using the Federal Form or the State Form. Act No. 10, 1994 Leg., Third Extraordinary Sess. (La. 1994) (codified at La. R.S. 18:103). La. R.S. 18:103 was amended in 2003 to authorize voter registration through a computer-generated form. Act No. 1220, 2003 Reg. Sess. (La. 2003).

25. Although both Louisiana and federal law require individuals to be citizens of the United States to register to vote, non-citizens have improperly registered to vote in Louisiana and have unlawfully voted in State and Federal elections in Louisiana.

26. In 2022, Louisiana voters passed a constitutional amendment clarifying that United States citizenship is a requirement to register to vote. Act No. 279, 2022 Reg. Sess. (La. 2022).

27. In 2024, the Louisiana Legislature passed Act 500—Senate Bill 436. Act No. 500, 2024 Reg. Sess. (La. 2024) (attached hereto as Exhibit 2). Governor Jeff Landry signed the bill into law, and it took effect on January 1, 2025. Act 500 changed Louisiana's election laws in two ways. First, it memorialized in statute Louisiana's constitutional citizenship requirement for voter eligibility by adding to the list of ineligible voters anyone "who is…[n]ot a citizen of the United States." La. R.S. 18:102(A)(3); *accord* 18 U.S.C. §§ 611, 1015(f). Second, it added as a requirement for the application for voter registration that "[e]ach applicant shall include with his application proof of United States citizenship." La. R.S. 18:102(D)(2). In light of the statutory changes, Louisiana was required to inform the EAC of the changes to its state voter eligibility requirements. 11 C.F.R. § 9428.6.

28. On January 30, 2025, the Louisiana Department of State submitted to the EAC a notice of the changes to Louisiana voter eligibility requirements and a request for modification to the Louisiana-specific instructions on the Federal Form. *See* Letter from J. Bollinger, Executive Counsel, to B. Schletz, EAC Executive Director, dated Jan. 30, 2025, including Declaration of Nancy Landry and Declaration of Sherri Wharton Hadskey (attached hereto as Exhibit 3).

29.    Noting the inefficiency and burden it would cause Louisiana to maintain dual voter registration implementation and verification practices, Louisiana explained that the most efficient strategy for implementing Act 500 was to provide the EAC an opportunity to approve revisions to the State-specific instructions on the Federal Form before amending Louisiana's State Form (formally called Louisiana's Voter Registration Application). *See* Ex. 3 at Landry Decl. ¶¶ 13, 17. The State estimated it would take approximately six months to implement revisions to the State Form after the EAC's decision and therefore requested an effective date of January 15, 2026, for revisions to the State-specific instructions and a decision from the EAC no later than July 1, 2025. Ex. 3 at 1.

30.    On February 24, 2025, Louisiana submitted an amended and supplemental request that included additional modifications to the State-specific instructions on the Federal Form. *See* Letter from J. Bollinger to B. Schletz, dated Feb. 24, 2025 (attached hereto as Exhibit 4). These modifications requested information that the State needs to utilize certain databases to assist state election officials with assessing the eligibility of voter registration applicants. *Id.*

31.    On May 16, 2025, Louisiana requested the EAC pause its review of the State's pending request so that it could submit additional evidentiary information. *See* Letter from J. Bollinger to B. Schletz, dated May 16, 2025 (attached hereto as Exhibit 5).

32.    On June 25, 2025, Louisiana asked the EAC to resume its review of the request to modify the State-specific instructions and consider the additional information provided, including supplemental Louisiana election statistical data. *See* Letter from C. Newsome, First Assistant Secretary of State, to B. Schletz, dated June 25, 2025, including the previously submitted Declaration of Secretary Landry and Supplemental Declaration of Sherri Wharton Hadskey (attached hereto as Exhibit 6).

33.    The June 25, 2025, Letter and accompanying Declarations from Secretary Landry and Commissioner of Elections Hadskey explained that many State and local elections in Louisiana are decided by very narrow margins. *Id.* at 4; *see also id.* at Supp. Hadskey Decl. ¶ 20, Attachment A.

Between 2021 and 2024, 362 Louisiana State and local elections were decided by less than 30 votes, and 180 of those elections were decided by less than 15 votes. Ex. 6 at 4. As such, a vote by a person who is not eligible to vote has the real potential to affect the outcome of Louisiana State and local elections and potentially close federal elections.

34.    To implement Act 500, Secretary Landry considered the options available to verify citizenship that would comply with State and federal law, prevent fraud and preserve the integrity of the election process, while minimizing unnecessary burdens on voter registration applicants. Secretary Landry determined that imposing obligations on state election officials to confirm eligibility would accomplish these goals, and she directed the Department of State to coordinate with the Louisiana Office of Motor Vehicles, the Louisiana Department of Public Health, the U.S. Citizenship and Immigration Services ("USCIS"), the National Association of Public Health Statistics and Information Systems ("NAPHSIS"), and custodians of other available databases to increase the State's access to existing information that will assist state election officials in assessing the eligibility of voter registrants, administering voter registration and other parts of the election process, and complying with state law. Ex. 6 at 5–6.

35.    The verification procedure Louisiana seeks to implement imposes obligations on state election officials to confirm eligibility in the first instance and is designed to reduce the number of voter registration applicants who will receive a request from the registrar of voters for additional information to assess eligibility. *Id.*; *see id.* at Landry Decl. ¶¶ 9–12, 15.

36.    Some of these databases require additional information to search for matches, including immigration enumerators, mother's maiden surname, sex, and place of birth, as applicable. As such, Secretary Landry determined it was necessary for voter registration applications to submit this additional information so that state election officials are able to assess voter eligibility and match

applicants to existing records. Secretary Landry therefore submitted the State's request for revisions to the Louisiana state-specific instructions on the Federal Form to include this specific information.

37. Louisiana's request for modifications to the State-specific instructions on the Federal Form included two options, based on the technical feasibility of the request: Option 1(A) would ask prospective voters to include their unique immigration number in Box 6 on the Federal Form, or if an applicant did not have a unique immigration number, to provide place of birth, sex, and mother's maiden name (if known) in Box 6; Option 1(B) would ask prospective voters to include that same information as an attachment to the Federal Form. Ex. 6 at 2–3. Option 1(B) was included for consideration by the EAC only if the EAC determined that Box 6 could not accommodate an applicant's identification number, place of birth, sex, and mother's maiden name, or an applicant's identification number and unique immigration identifier, as applicable (i.e. if there was not enough space to include the requested information). *Id.*

38. On September 11, 2025, EAC Executive Director Schletz sent a letter to Secretary Landry informing her that the Commission rejected the request to amend the Louisiana State-specific instructions for Box 6 of the Federal Form as presented in Option 1(A) ("Original EAC Decision Letter") (attached hereto as Exhibit 7). Defendant Schletz stated that the EAC General Counsel determined that the requested revisions require an applicant to provide information not previously requested in order to register to vote using the Federal Form. *Id.* at 5. As a result, General Counsel determined that the Commission was required to determine if the change is necessary to assess the eligibility of the applicant and/or to administer voter registration and other parts of the election process and whether Louisiana had put forth evidence of necessity. *Id.* General Counsel referred the question to the EAC Commissioners. *Id.*

39.     The Original EAC Decision Letter states that on August 27, 2025, EAC Chair Donald Palmer called a vote by tally ballot and provided the following recommendation for consideration by the Commissioners:

> The Commission should approve the State of Louisiana's request to modify its State-Specific Instructions on Box 6 of the Federal Form as 'necessary' under Option 1(A) as presented by Louisiana. Option 1(A) requests certain information such as unique identifying numbers, if available, or, if not, the applicant's place of birth, sex, and if known, mother's maiden surname, to assess eligibility without the applicant being required to attach documentation or appear at the election office. Option 1(A) provides the opportunity for applicants to provide necessary information to Louisiana to confirm the eligibility of applicants without any additional action by the applicant.

*Id.*

40.     On September 5, 2025, Chair Palmer certified the results of the tally vote matter. Ex. 7 at 5. Commissioners Palmer and McCormick voted affirmatively, and Commissioners Hovland and Hicks disapproved. *Id.* As such, the recommendation did not receive the majority approval as required under HAVA, 52 U.S.C. § 20928. *Id.*

41.     The Original EAC Decision Letter states that the Commission did not determine that Box 6, in its current or revised format, cannot accommodate the request presented in Option 1(A); therefore, the Commission did not independently consider Option 1(B). *Id.* The letter informed Secretary Landry that Louisiana may request that the Commission consider Option 1(B) independent of the Commission's disposition of Option 1(A). *Id.*

42.     Louisiana's request included two additional, unrelated modifications: one for a stylistic change so that Item 6 refers to "you" and "your" instead of "the applicant," and the other related to an amendment to Louisiana law that provides for a closed party primary system of elections for certain offices. These modifications were approved by the EAC as part of the Original EAC Decision.

43.     On September 26, 2025, Louisiana requested independent consideration of Option 1(B) and asked for "prompt consideration" of that request. *See* Letter from J. Bollinger to B. Schletz, dated September 26, 2025 (attached hereto as Exhibit 8).

44.    On November 10, 2025, Louisiana submitted a letter to the EAC requesting a short pause on its consideration of the September 26, 2025, request for independent consideration of Option 1(B), noting that supplemental information was now available that was pertinent to that request, and Louisiana's submission of that information was forthcoming. *See* Letter from J. Bollinger to B. Schletz, dated November 10, 2025 (attached hereto as Exhibit 9).

45.    On November 21, 2025, Louisiana submitted its final request to the EAC, supplementing its September 26, 2025, request that the EAC consider Option 1(B). *See* Letter from J. Bollinger to B. Schletz, dated November 20, 2025 (attached hereto as Exhibit 10). To evidence the necessity for changes to both the State and Federal Form, the Department provided the EAC with a Memorandum from the Department's Election Integrity Division regarding non-citizens who, as of May 2025, were on Louisiana's voter roll, the number of those non-citizens who voted in a Louisiana election, and the total number of votes cast by those non-citizens. Based on the information presented, the Department requested that the EAC reconsider its decision to reject the request to amend the Louisiana state-specific instructions for Box 6 of the Federal Form as presented in Option 1(A) and independent consideration of Option 1(B) should the EAC determine that Option 1(A) was not technically feasible.

46.    As stated in the Memorandum provided to the EAC, the Department determined that as of May 2025, 403 non-citizens were on Louisiana's voter rolls. Ex. 10 at 3. After investigation and verification by the Election Integrity Division, all 403 individuals were challenged under La. R.S. 18:193(G) and afforded an opportunity to present documentation confirming citizenship. *Id.* None of the 403 individuals challenged provided valid citizenship documentation, and all were canceled from the voter rolls. *Id.* 83 of the 403 non-citizens voted in a Louisiana election, and those 83 individuals cast a total of 440 votes throughout their voting history. *Id.* These data pertained to

current registrants and their voting history as of May 2025 and did not include historical data regarding the voting history of any previously canceled registrants.

47.     The supplemental information contained in the November 21, 2025, submittal to the EAC, combined with the previous information submitted to the EAC, including the number of State and local elections in Louisiana that have been decided by very narrow margins, justified the modification to the State-specific instructions as necessary to enable the state election officials to assess the eligibility of an applicant and to administer voter registration and other parts of the election process.

48.     On January 16, 2026, the Department received a response and decision from the EAC regarding its request for modifications to the State-specific instructions to the Federal Form. *See* B. Schletz letter to J. Bollinger, dated January 16, 2026 ("Final EAC Decision Letter") (attached hereto as Exhibit 11). That response states that on December 18, 2025, EAC Chair Donald Palmer called a vote by tally ballot, recommending that the Commissioners approve the State of Louisiana's request to modify its State-specific instructions on Box 6 pursuant to Option 1(A) as necessary because it "provides the opportunity for applicants to provide necessary information for Louisiana to confirm the eligibility of applicants without any additional action by the applicant … [a]pproval of these instructions would improve the efficiency, accuracy and overall integrity of the voter registration process to the benefit of the voter." *Id.* at 5. In the alternative, Chair Palmer recommended the Commission approve Option 1(B), noting that although it would require additional action by the applicant, "Option 1(B) would allow Louisiana to collect the information it has deemed necessary in conducting the secure administration of elections in its own jurisdiction." *Id.*

49.     On January 8, 2026, Chair Palmer certified the results of the tally vote. Commissioners Palmer and McCormick voted affirmatively, finding that, "Louisiana has indeed met the necessity justification required by the Statute." *Id.* at 5. Commissioners Palmer and McCormick provided a joint

statement explaining the full rationale of their vote, which is attached as Appendix 1 to the decision. *See* Ex. 11, App'x 1. Commissioners Hicks and Hovland disapproved, finding that, "Louisiana's Option 1(A) and 1(B) fail to meet the standard of necessity and would be at odds with Congress's intent through passage of the National Voter Registration Act related to the federal form." Ex. 11 at 6. Commissioners Hicks and Hovland also provided a joint statement explaining the full rationale of their vote, which is attached as Appendix 2 to the decision. *See* Ex. 11, App'x 2. Because the recommendation did not receive majority approval as required under HAVA, 52 U.S.C. § 20928, the Commission did not approve Louisiana's request to modify the Louisiana-specific instructions for Box 6 of the Federal Form.

50.     The EAC's rejections of Louisiana's request to amend the State-specific instructions for Box 6 of the Federal Form as presented in Option 1(A), or alternatively Option 1(B), constitute a final agency action.

## CLAIMS FOR RELIEF

### Count One: Violation of the APA, Section 706(1)

#### *(Agency Action Unlawfully Withheld)*

51.     Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52.     As a sovereign State in the United States, Louisiana has the constitutional right, power, and privilege to establish voting qualifications and regulate the conduct of federal elections, including voter registration requirements. U.S. Const. art. I, § 2, cl. 1; art. I, § 4, cl. 1; U.S. Const. amend. X and XVII. This power includes the right and obligation to request information Louisiana deems necessary to enable state election officials to assess the eligibility of voter registration applicants and administer voter registration and other parts of the election process. 52 U.S.C. § 20508(b)(1); *ITCA*, 570 U.S. at 19.

53.     Louisiana has an indisputable interest in preventing election fraud and preserving the integrity of its election process. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Ensuring that only eligible United States citizens are voting is a legitimate state interest and an important aspect of election integrity. *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 196 (2008).

54.     To determine the citizenship eligibility of a prospective voter, the current Federal Form requires only that an applicant sign an attestation averring that he or she is a United States citizen.

55.     Other voter eligibility requirements do not solely rely on an attestation and instead are verified by States, including Louisiana, using information on the Federal Form, including name, date of birth, driver's license number and/or social security number. For example, under HAVA, States are required to verify the information of newly registered voters for federal elections by establishing a computerized state-wide voter registration list and verifying new voter information with the state motor vehicle authority and/or the Social Security Administration ("SSA"), as applicable. 52 U.S.C. § 21083(a)(1), (5). States are authorized and required to use the motor vehicle authority and SSA databases to "verify the accuracy of the information provided on applications for voter registration." § 21083(a)(5)(B)(i).

56.     In 2024, the Louisiana Legislature determined that proof of citizenship is information that must be provided by a voter registration application in order for election officials to assess eligibility. La. R.S. 18:104(D). The Louisiana Secretary of State is responsible for prescribing the form to be used for voter registration. This form must contain the mandatory information outlined in La. R.S. 18:104(A), and the Secretary of State may require any reasonable additional information as he or she deems necessary for the effective registration of voters. La. R.S. 18:104(G).

57.     To implement Act 500, the Secretary of State determined that, with information readily known or obtainable by prospective voters, applicants could demonstrate, and Louisiana election

15

officials could verify, citizenship eligibility. In addition to the information on the current Federal Form, Secretary Landry found that citizenship could be determined by requesting applicants to provide, if applicable, a unique immigration identifier, including USCIS/Alien Registration Number; Form I-94, Arrival/Departure Record; Student and Exchange Visitor Information System ID number; Naturalization/Citizenship Certificate Number; or Card Number/I-797 Receipt Number. When applicable, if the applicant does not have a unique immigration number, the applicant is asked to provide a place of birth, sex, and, if known, mother's maiden surname.

58. The Secretary of State further determined that requesting this known and accessible information allows Louisiana to comply with State and federal law by keeping the responsibility of verifying eligibility on the State. This process complies with the objectives of the NVRA to improve the speed and efficiency through which voter registration applications can be processed, thereby increasing the number of citizens who register to vote in elections while minimizing the burden on all voter registration applicants. *See* 52 U.S.C. § 20501(b).

59. Pursuant to the NVRA, Louisiana is required to notify the EAC of changes to its voter registration requirements and request that the EAC modify the State-specific instructions on the Federal Form to reflect its voter qualification and registration laws and include information Louisiana deems necessary to enable state election officials to assess the eligibility of applicants and to administer voter registration and other parts of the election process. 52 U.S.C. § 20508(b); *ITCA*, 570 U.S. at 18–20.

60. Pursuant to the NVRA, once a State has determined that additional information is necessary to enable state election officials to assess the eligibility of applicants and administer voter registration and other parts of the election process, the EAC has a nondiscretionary duty, at the request of the state, to modify the state-specific instructions of the Federal Form to reflect state law. *See ITCA*, 570 U.S. at 19–20 (recognizing that, "[s]hould the EAC's inaction persist, Arizona would have the

opportunity to establish in a reviewing court that a mere oath will not suffice to effectuate its citizenship requirement and that the EAC is therefore under a nondiscretionary duty to include Arizona's concrete evidence requirement on the Federal Form" (citing § 706(1))).

61.    The APA authorizes a reviewing court to "compel agency action unlawfully withheld." 5 U.S.C. § 706(1). "Agency action" is "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." § 551(13).

62.    The Final EAC Decision Letter rejecting Louisiana's request to amend the State-specific instructions for Box 6 of the Federal Form as presented in Option 1(A) or Option 1(B) constitutes final agency action.

63.    The EAC's failure to modify the State-specific instructions on the Federal Form as requested by a chief State election officer constitutes agency action unlawfully withheld under the APA, 5 U.S.C. § 706(1).

## Count II: Violation of the APA, Section 706(2)(A)

### *(Agency Action Was Arbitrary, Capricious, and Abuse of Discretion, or Otherwise Not in Accordance with Law)*

64.    Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.    The APA requires a reviewing court to hold unlawful and set aside agency action, findings, and conclusions of law found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

66.    The EAC's failure to modify the Louisiana-specific instructions on the Federal Form as requested by the Secretary of State constitutes agency action that was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A); *see ITCA*, 570 U.S. at 20 (observing that "Arizona might also assert (as it has argued here) that it would be arbitrary for the EAC to include Arizona's instruction when it has accepted a similar instruction requested by Louisiana").

67.    Under the arbitrary-and-capricious standard, an agency must reasonably consider the relevant issues and reasonably explain its decision. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Different results on similar facts must be justified "to lend predictability and intelligibility" to agency actions and "promote fair treatment, and facilitate judicial review." *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020).

68.    In 2012, the EAC approved a modification to the Louisiana-specific instructions for the Federal Form similar to the proposed instructions requested in the current request. That instruction requires applicants who do not have a Louisiana driver's license, a Louisiana special identification card, or a social security number to attach (1) a copy of a current and valid photo identification; or (2) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the applicant. *See* Federal Form, State Instructions, Louisiana, at 10; *see also* Illinois Instructions (applicants who do not have an Illinois driver's license, Secretary of State ID card, or social security number must attach (i) a copy of a current and valid photo identification, or (ii) a copy of a current utility bill, bank statement, government check, paycheck, or other government document), *id.* at 8; and Montana Instructions (applicants unable to provide a Montana driver's license number, Montana identification card, or social security number can provide a United States passport, Montana tribal card, military ID card, or Montana concealed carry permit; or submit a photo identification and a current utility bill, bank statement, paycheck, government check, or other government document), *id.* at 13. Each of these instructions requires applicants who do not have a driver's license, identification card, or social security number to provide or attach additional identifying information with the Federal Form. Louisiana's current request to the EAC is similar to its 2012 request for modifications to the State-specific instructions to the Federal Form, which was approved by the EAC.

69.    Louisiana's request should be distinguished from previous States' requests for *documentary* proof of citizenship because it does not require applicants to, *e.g.*, obtain a United States passport or a copy of their birth certificate. *See, e.g.*, *Kobach v. United States Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014). If an applicant has a unique immigration identifier, they are asked only to provide the number on the form. If they do not, they are asked to provide place of birth, sex, and if known, mother's maiden surname.

70.    The Final EAC Decision Letter states that Commissioners Palmer and McCormick voted affirmatively, finding that "Louisiana has indeed met the necessity justification required by the Statute." Ex. 11 at 5–6. Commissioners Hicks and Hovland disapproved, finding that, "Louisiana's Option 1(A) and 1(B) fail to meet the standard of necessity and would be at odds with Congress's intent through passage of the National Voter Registration Act related to the federal form." *Id.* at 6.

71.    Commissioners Palmer and McCormick explained that Louisiana has previously requested, and the Commission approved "without controversy," that applicants without a Louisiana driver's license, special identification card, or social security number, be required to attach additional documents or eligibility numbers to the Federal Form to confirm identity, but that "instructing applicants to provide readily available information to allow the necessary confirmation of citizenship eligibility is not provided the same deference by the Commission." *Id.*, App'x 1 at 2. Commissioners Palmer and McCormick further stated that the recent analysis of the Louisiana voter list with the SAVE data shows more than sufficient information pertinent to the question of the necessity of requesting certain information from registration applicants to verify eligibility. *Id.* at 1. "Louisiana has shown that the current system to verify eligibility is not guaranteed and requesting additional information be provided by the applicant would inevitably improve the election administration process by verifying eligible voters…." *Id.* at 2. The Commissioners reasoned that the NVRA requires an official notice to be sent to voter registration applicants to allow for the confirmation of an address.

*Id.* at 6. "If it has been deemed worthwhile to verify the address, should not the same be allowed for citizenship?" *Id.*

72.     Commissioners Palmer and McCormick accurately noted that Louisiana is not asking applicants to prove their citizenship, but to provide additional information they may have so election officials can confirm the accuracy of the information in the voter application in a manner that is efficient for both the voter and the election official. *Id.* at 5. This imposes a *de minimis* burden on the applicants and shifts nearly all of the burden to state election officials to determine eligibility. *Id.*

73.     Commissioners Hicks and Hovland did not approve Louisiana's request, first claiming logistical issues with the request for new information in Box 6 of the Federal Form. They assert that the nature of the new information requested for Box 6 under both Options 1(A) and 1(B) is different than what is currently required "and may cause confusion to voters." But the nature of the currently approved Louisiana-specific instructions is also different. *See* Ex. 1 at 8. Louisiana, like Montana, already requires applicants, in some instances, to provide an ID number and a copy of a current and valid photo identification or a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the applicant. *See* Ex. 1 at 13. Commissioners Hicks and Hovland do not assert that the Louisiana- and Montana-specific instructions have proven to be confusing to voters.

74.     Commissioners Hicks and Hovland further assert, without explanation, that Louisiana's Option 1(B) is similar to the request Arizona made of the Commission nearly 20 years ago that led to litigation, citing *ITCA.* Ex. 11, App'x 2 at 1. However, Louisiana's June 25, 2025, request to the EAC makes it clear that the modifications requested are intentionally distinct from those at issue in *ITCA*, and Louisiana's request was narrowly tailored to allow applicants to include the readily known or easily ascertainable information with their applications that would allow Louisiana election officials to verify eligibility.

75.     Commissioners Hicks and Hovland assert that the State did not provide evidence identifying the number of applicants who used the Federal Form, and Louisiana had the option of implementing a bifurcated system using a revised State Form to register applicants in state elections. *Id.* at 2–3. But this misses the point. Louisiana has the constitutional authority and obligation to verify an applicant's eligibility to vote in all elections, state and federal, and the NVRA authorizes States to develop and use state mail voter registration forms for the registration of voters in federal elections. It is unclear how using a bifurcated system changes the analysis.

76.     The EAC's failure to modify the Louisiana-specific instructions on the Federal Form as requested by the Secretary of State constitutes agency action that was arbitrary, capricious, an abuse of discretion, and otherwise not made in accordance with law under the APA, 5 U.S.C. § 706(2)(A). Commissioners Hicks and Hovland's rationale for disapproving Louisiana's request was also arbitrary, capricious, an abuse of discretion, and otherwise not made in accordance with law under the APA.

### Count III: Violation of the APA, Section 706(2)(C)

*(Agency Action Was in Excess of Statutory Jurisdiction, Authority, or Limitations, and Contrary to Constitutional Right)*

77.     Paragraphs 1 through 76 are realleged and incorporated herein by reference.

78.     The APA requires a reviewing court to hold unlawful and set aside agency action, findings, and conclusions of law found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B), (C).

79.     Pursuant to the NVRA, Louisiana is required to notify the EAC of changes to its voter registration requirements and to request that the EAC modify the State-specific instructions on the Federal Form to reflect its voter qualification and registration laws and include information Louisiana deems necessary to enable state election officials to assess the eligibility of applicants and to administer

21

voter registration and other parts of the election process. 52 U.S.C. § 20508(b); *ITCA*, 570 U.S. at 18–20.

80.     Pursuant to the NVRA, once a State determines that additional information is necessary to enable state election officials to assess the eligibility of applicants and administer voter registration and other parts of the election process, the EAC has a nondiscretionary duty, at the request of the State, to modify the State-specific instructions of the Federal Form to reflect state law. *Id.*

81.     The EAC does not have the authority or right under the NVRA to decline the Secretary of State's request to modify the Louisiana-specific instructions on the Federal Form that reflect the voter qualification and registration laws of the State of Louisiana or that enable Louisiana election officials to assess the eligibility of applicants and administer voter registration and other parts of the election process.

82.     To the extent the EAC interprets its authority under the NVRA as including the right to deny a State from requesting information it not only determined was necessary to assess the eligibility of applicants and administer voter registration but also to comply with state law which requires proof of citizenship, such an interpretation exceeds the scope of Congress' and the EAC's authority. *See* U.S. Const. art. I, § 4, cl. 1; *ITCA*, 570 U.S. at 16 ("the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them") (emphasis in original)). And the United States Supreme Court stated in *ITCA* that "it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." 570 U.S. at 17.

83.     Congress may not delegate power to an administrative agency that Congress itself does not possess, and agencies must interpret and apply their statutory duties in light of constitutional boundaries. Therefore, the determination by the EAC that the NVRA authorizes it to deny Louisiana's request is in excess of its statutory authority.

84.     The EAC's failure to modify the Louisiana-specific instructions on the Federal Form as requested by the Secretary of State constitutes agency action that was in excess of statutory jurisdiction, authority, limitations, or short of statutory right under the APA, 5 U.S.C. § 706(2)(C).

**Count IV: *Ultra Vires* and Declaratory Judgment Act**

*(Agency Action Is Unconstitutional)*

85.     Paragraphs 1 through 84 are realleged and incorporated herein by reference.

86.     As this Court has recognized, reviewing executive action "as to whether it was *ultra vires* is appropriate to determine whether the [executive] has violated the Constitution, the statute under which the challenged action was taken violated the Constitution or conflicted with other statutes, or whether there was no statutory authority to take a particular action." *Louisiana v. Biden*, 622 F. Supp. 3d 267, 288 (W.D. La. 2022); *see Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002); *Associated Builders & Contractors of Se. Tex. v. Rung*, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016); *Ancient Coin Collectors Guild v. U.S. Customs & Border Protection*, 801 F. Supp. 2d 383, 406 (D. Md. 2011). In this case, the statute under which the EAC acted—52 U.S.C. § 20508—is unconstitutional, and thus the EAC's action is *ultra vires*.

87.     As a sovereign State of the United States, Louisiana has the constitutional right, power, and privilege of establishing voting qualifications, including voter registration requirements. U.S. Const. art. I, § 2, cl. 1; U.S. Const. amend. X and XVII.

88.     That sovereign right is violated by 52 U.S.C. § 20508, which provides that the Federal Form "may require only such identifying information ... as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." Specifically, this statutory provision purports to limit Louisiana's sovereign right to determine voter eligibility by permitting Louisiana to exercise that right only "as is necessary" according to a federal agency.

23

89.     That is a shocking intrusion upon a power and right that the Constitution expressly delegates to States like Louisiana—and for that reason, it is unconstitutional. No one would say that the federal government could permit a citizen to bear arms only "as is necessary" in a federal agency's view. *Cf. N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022) (rejecting the application of "means-end scrutiny" in the Second Amendment context). Nor would anyone say that a State could accord "the equal protection of the laws" to its citizens only "as is necessary" in the State's view. *Cf.* U.S. Const. amend. XIV, § 1. Yet that is exactly the approach embraced by § 20508.

90.     The Supreme Court in *ITCA* recognized this problem and attempted to avoid it by suggesting that a State may vindicate its sovereign authority by either (a) "challeng[ing] the EAC's rejection of [a] request in a suit under the Administrative Procedure Act" or (b) "seek[ing] a writ of mandamus" to compel EAC's compliance with § 20508. 570 U.S. at 19–20 & n.10. But those proposals presuppose the legitimacy and constitutionality of § 20508, and thereby subordinate Louisiana's sovereign right to the strictures of APA review or the high bar of mandamus relief. There is no basis in law to conclude that a duly delegated constitutional right may be regulated by imposing upon the right-holder a burden to prove entitlement to APA or mandamus relief before exercising that right.

91.     For this reason, EAC's final agency action pursuant to § 20508 is *ultra vires* because the statute itself is unconstitutional. Plaintiffs accordingly request a declaration to this effect and an injunction barring EAC from enforcing § 20508. In the alternative, Plaintiffs request a declaration that the statute "only requir[es] [Louisiana] to accept and use the [Federal Form] as part of its voter registration process, leaving the State free to request whatever additional information it determines is necessary to ensure that voters meet the qualifications it has the constitutional authority to establish." *ITCA*, 570 U.S. at 23 (Thomas, J., dissenting); *accord ITCA*, 570 U.S. at 46 (Alito, J., dissenting) ("We could avoid this nonsensical result by holding that the Act lets the States decide for themselves what information 'is necessary ... to assess the eligibility of the applicant'—both by designing their own

24

forms and by requiring that federal form applicants provide supplemental information when appropriate."). Insofar as *ITCA* held otherwise, it should be overruled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, the Election Assistance Commission and Executive Director Schletz, in her official capacity, and award the following relief:

A.      Hold unlawful and set aside the EAC's findings and decision in the Final EAC Decision Letter denying Secretary Landry's request to modify the Louisiana-specific instructions on the Federal Form, as requested by the Secretary of State under Option 1(A), or in the alternative, Option 1(B), as agency action unlawfully withheld; arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA;

B.      Declare that, to the extent the NVRA vests discretionary authority with the EAC to refuse to modify the State-specific instructions of the Federal Form to reflect Louisiana's voter qualification and registration laws, while at the same time requiring that Louisiana accept and use the Federal Form to register individuals to vote, the NVRA is unconstitutional as applied by the EAC or as applied to the State of Louisiana.

C.      Enjoin the EAC and any employee or officer acting on the EAC's behalf from exercising discretion to refuse, at the request of the chief state election official, to modify the Louisiana-specific instructions on the Federal Form to reflect the voter qualification and registration laws of Louisiana in a manner that the chief state election official has determined is necessary to enable election officials to assess the eligibility of applicants and administer voter registration and other parts of the election process.

D.      Declare that § 20508 is unconstitutional or, at a minimum, only requires a State to accept and use the Federal Form as part of its voter registration process, leaving the State free to request whatever additional information it determines is necessary to ensure that voters meet the qualifications it has the constitutional authority to establish.

E.      Award Plaintiffs their costs, reasonable attorneys' fees, and such other relief as the Court may deem just and proper.


Dated: April 14, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General


/s/ Samuel W. Plauché IV
SAMUEL W. PLAUCHÉ IV (La #20444)
MEGAN TERRELL (La #29433)
HARRY VORHOFF (La #35365)
PLAUCHÉ & CARR
1110 River Rd S. Suite 200
Baton Rouge, LA 70802
Telephone:  (225) 256-4028
Facsimile:   (206) 588-4255
Billy@plauchecarr.com
Megan@plauchecarr.com
Harry@plauchecarr.com

Counsel for Plaintiff Nancy Landry

/s/ Caitlin Huettemann
CAITLIN HUETTEMANN (La #40402)
  Assistant Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone:  (225) 421-4088
Facsimile:   (225) 326-6795
HuettemannC@ag.louisiana.gov

Counsel for Plaintiffs