**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

|  |  |
|---|---|
| THE STATE OF LOUISIANA, by and through its Attorney General, LIZ MURRILL; and NANCY LANDRY, Louisiana Secretary of State,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>THE UNITED STATES ELECTION ASSISTANCE COMMISSION; and BRIANNA SCHLETZ, in her official capacity as the Executive Director of the United States Election Assistance Commission,<br><br>   *Defendants*. | Case No. 3:26-cv-01191<br><br>(Hon. Terry A. Doughty) |

**NATIONAL COUNCIL OF JEWISH WOMEN, GREATER NEW ORLEANS
CHAPTER'S MOTION TO INTERVENE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ....................................................................................................................... 3

I.      Louisiana passed SB 436 requiring proof of citizenship for prospective voters. ............... 3

II.     Louisiana sued the EAC.............................................................................................. 6

III.    Plaintiffs' suit threatens NCJW and its respective members' interests. ........................... 7

LEGAL STANDARD................................................................................................................. 8

ARGUMENT ............................................................................................................................. 9

I.      NCJW is entitled to intervention as of right. .................................................................. 9

        A.      This motion is timely. ....................................................................................... 9

        B.      Plaintiffs' suit threatens to impair NCJW's significantly protectable interests.... 10

        C.      No other party adequately represents NCJW's interests..................................... 14

II.     NCJW satisfies the requirements for permissive intervention......................................... 16

CONCLUSION......................................................................................................................... 17

CERTIFICATE OF SERVICE AND CONSENT SOUGHT ....................................................... 19

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
No. 2:24-cv-2987-SPL, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) ............................... 17

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) ............................................................................................................ 1

*Atlantis Dev. Corp. v. United States*,
379 F.2d 818 (5th Cir. 1967) ........................................................................................ 13

*BellSouth Telecomm. LLC v. New Orleans Teleport Inc.*,
No. 6:16-CV-001624, 2017 WL 4898833 (W.D. La. Oct. 30, 2017) .............................. 16

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) ...................................................................................................... 14

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ........................................................................................ 10

*County of San Miguel v. MacDonald*,
244 F.R.D. 36 (D.D.C. 2007) ........................................................................................ 11

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) ........................................................................................ 15

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ...................................................................................... 14

*Ill. State Bd. of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979) ...................................................................................................... 11

*Issa v. Newsom*,
No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) .............. 11

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
No. 1:24-cv-1867-SLE, 2024 WL 3454706 (N.D. Ill. July 18, 2024) .............................. 10

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) .......................................................................................... 14

*La Union del Pueblo Entero v. Abbott*,
29 F. 4th 299 (5th Cir. 2022) ................................................................................... *passim*

*League of United Latin Am. Citizens v. Exec. Off. of President*,
808 F. Supp. 3d 29 (D.D.C. 2025) ................................................................................ 15

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ...................................................................... 11

*League of Women Voters of N.C. v. North Carolina*,
    No. 1:13-cv-00660-TDS-JEP, 2014 WL 12770081 (M.D.N.C. Jan 27, 2014) ................ 17

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022).................................................. 9

*Newby v. Enron Corp.*,
    443 F.3d 416 (5th Cir. 2006) .......................................................................... 9

*Paher v. Cegavske*,
    No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .............. 11

*Pub. Int. Legal Found., Inc., v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020).............................................................. 17

*Reynolds v. Sims*,
    377 U.S. 533 (1964)...................................................................................... 13

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ......................................................................... 16

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) .......................................................................... 9

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ......................................................................... 13

*Sierra Club v. Glickman*,
    82 F.3d 106 (5th Cir. 1996) ........................................................................... 13

*Stone v. First Union Corp.*,
    371 F.3d 1305 (11th Cir. 2004) ................................................................. 13, 14

*Teague v. Bakker*,
    931 F.2d 259 (4th Cir. 1991) .................................................................... 10, 12

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ......................................................................... 10

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)...................................................................................... 14

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ................................................................. 9, 12, 16

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886)........................................................................................ 11

**Statutes**

52 U.S.C. § 2508.................................................................................................. 6

La. Stat. Ann. § 18:104(D)(2) ......................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 24 .......................................................................................... 2, 8, 12

**Other Authorities**

Exec. Order No. 14215 § 2(a), 90 Fed. Reg. 10447 (Feb. 18, 2025)............................ 16

Exec. Order No. 14248 § 2(a), 90 Fed. Reg. 14005 (Mar. 25, 2025) ............................ 3

7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2024)................................ 14

**INTRODUCTION**

In June 2024, Louisiana passed SB 436, or Act 500, which requires prospective voters to include "proof of United States citizenship" with their voter registration applications. La. Stat. Ann. § 18:104(D)(2). Secretary of State Landry sold the bill to legislators by suggesting that SB 436 would be enforced by requiring voters to submit documents like passports, certificates of citizenship, and birth certificates—although she never explained exactly what would satisfy SB 436. Now, the Secretary wants to enforce SB 436 by requiring applicants to provide certain information like place of birth (State/Province/County), sex, Naturalization/Citizenship Certificate Numbers, and mother's maiden name. But under federal law, those requests "must be approved" by the U.S. Election Assistance Commission (the "EAC") before they are added to Louisiana's state-specific instructions for the federal voter registration form. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 6 (2013) (Scalia, J.). The EAC has twice rejected the Secretary's requests.

In August 2025, Proposed Intervenor National Council of Jewish Women, Greater New Orleans Chapter ("NCJW") sued Plaintiff Secretary of State Nancy Landry in the Middle District of Louisiana over the lawfulness of SB 436, including the Secretary's EAC requests described above. *See* Compl., *Nat'l Council of Jewish Women, Greater New Orleans Chapter v. Landry*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Aug. 1, 2025), ECF No. 1 ("*NCJW*" or "Middle District Litigation"). Discovery in that case is ongoing, with a fully briefed motion to dismiss pending before that court. The EAC issues are central to that case; for example, the State filed an (unsuccessful) motion to stay discovery premised on the EAC requests. *See* Mot. to Stay, *NCJW*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Nov. 26, 2025), ECF No. 38; Telephone Conference Report & Order, *NCJW*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Dec. 9, 2025), ECF No. 40.

The State referenced the EAC fourteen times in its motion to dismiss. *See* Mem. Supp. Mot. to Dismiss, *NCJW,* No. 3:25-cv-000676-JWD-SDJ (M.D. La. Feb. 27, 2026), ECF No. 47-1. And the State notified the court in that litigation each time it took action with the EAC. *E.g.,* Notice of EAC Letter, *NCJW*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Nov. 26, 2025), ECF No. 37.

On April 15, just weeks after finishing Rule 12(b) briefing there, the State filed this lawsuit concerning the same EAC requests at issue in the Middle District Litigation. Accordingly, NCJW—a plaintiff in that suit and an organization whose mission-critical activities include registering eligible Louisianans to vote—moves to intervene in this suit to protect its own organizational interests and the interests of its membership of Louisiana eligible voters.

Rule 24 of the Federal Rules of Civil Procedure provides for intervention as of right where the applicant has a direct interest that may be impaired by the litigation and is not adequately represented by the existing parties.[1] That standard is clearly met here. NCJW registers thousands of voters per year, has more than 1,000 dues-paying members, and voter registration assistance is one of the core services that it offers in the community. Decl. ¶ 5. The new requirements Plaintiffs seek to add to the federal voter registration form will make it harder for NCJW to register new voters—almost all of whom are students—and most of whom already lack ready access to information mandated even by *existing* requirements. Plaintiffs' new registration requirements will also impair the interests of NCJW's members, some of whom are qualified Louisiana voters that are not currently registered to vote, and others of whom are naturalized citizens that are likely to face additional scrutiny under Plaintiffs' requested changes. And of course, any decision in this case will have, at the very least, substantial effects on the Middle District Litigation brought by

---

[1] Proposed Intervenor respectfully requests leave to file a Rule 12(b) motion within the time period prescribed by the Federal Rules of Civil Procedure or pursuant to any schedule set by this Court.

NCJW—a consideration that has led the Fifth Circuit to reverse numerous intervention denials by district courts in this circuit. *See infra* Argument I.B.

NCJW also meets the other requirements for intervention of right. This motion is timely because it comes only three days after Plaintiffs filed suit. No party represents NCJW's interest in preserving its scarce organizational resources and the voting rights of its members. Not Plaintiffs, who expressly seek to add additional requirements to the federal voter registration form. And not the federal defendants, who do not share NCJW's interest in protecting its own members and mission-critical voter registration programs. In fact, the federal government is unlikely to defend this case at all—or at the very least, may take a conciliatory posture towards the relief sought— given the Executive Branch's policy objectives favoring the addition of proof-of-citizenship requirements for voter registration. *See, e.g.*, Exec. Order No. 14248 § 2(a), 90 Fed. Reg. 14005 (Mar. 25, 2025) (directing the EAC to add documentary proof of citizenship requirements to the federal voter registration form).

Alternatively, the Court should grant NCJW permissive intervention. NCJW will raise defenses and arguments that are inextricably intertwined with issues previewed in the Complaint, and its participation will enhance the Court's ability to resolve those issues without causing any undue prejudice or delay. This Court should grant intervention.[2]

## BACKGROUND

I.     **Louisiana passed SB 436 requiring proof of citizenship for prospective voters.**

In June 2024, Louisiana passed SB 436, or Act 500, which requires prospective voters to include "proof of United States citizenship" with their voter registration applications. La. Stat. Ann.

---

[2] As required by Local Rule 7.6, Proposed Intervenor presented their proposed Answer and Order to counsel for Plaintiffs and sought consent to this motion. Counsel for Plaintiffs oppose intervention.

§ 18:104(D)(2). Proposed Intervenor NCJW brought a lawsuit challenging SB 436's proof-of-citizenship requirement on August 1, 2025. Compl., *NCJW*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Aug. 1, 2025), ECF No. 1. NCJW's suit alleges that SB 436 violates numerous provisions of the National Voter Registration Act. *Id.* ¶¶ 167–202. As relevant here, it also alleges that Louisiana's requests to the EAC, as detailed below, would violate the Materiality Provision of the Civil Rights Act. *Id.* ¶¶ 203–11.

On January 30, 2025, Secretary Landry sent an initial letter to the EAC requesting approval to require additional identifying information from prospective voters so that Louisiana can "verify" their citizenship—specifically "to comply with" SB 436. Ex. 3 at 3, ECF No. 1-4. The Secretary submitted updated requests on February 24, May 16, and June 25, 2025. Ex. 4 at 2–3, ECF No. 1-5; Ex. 5 at 2–3, ECF No. 1-6; Ex. 6 at 2–7, ECF No. 1-7. In her June 2025 letter, the Secretary's office asked the EAC to approve one of two options. In Option 1(A), the Secretary asked that applicants be required to provide the following information:

- If applicable, the applicant must provide her "unique immigration identifier (e.g. USCIS/Alien Registration Number; Form I-94, Arrival/Departure Record, number; Student and Exchange Visitor Information System (SEVIS) ID number; Naturalization/Citizenship Certificate Number; or Card Number/I-797 Receipt Number)."

- If the applicant has no unique immigration identifier, the applicant must provide (1) her place of birth (State/Province/County); (2) sex; and (3) if known, the applicant's mother's maiden name.

Ex. 6 at 3, ECF No. 1-7. In case the EAC determined that this information would not fit on the voter registration form, the Secretary's office provided an alternative request, "Option 1(B)," which would require the applicant to attach a separate document stating their ID number, place of birth, and unique immigration identifier. Ex. 6 at 4, ECF No. 1-7.

On September 11, 2025, the EAC notified Secretary Landry that it had voted to reject Louisiana's request under Option 1(A). Ex. 7, ECF No. 1-8. The EAC explained that, when a state

4

requests authorization to demand additional information from prospective registrants, the NVRA requires the EAC "to determine if the change is necessary to assess the eligibility of the applicant," and accordingly, to assess whether "Louisiana had put forth evidence of necessity." Ex. 7 at 6, ECF No. 1-8. After doing so, the EAC concluded that it "must reject the request" to require additional information. Ex. 7 at 6, ECF No. 1-8.

On September 26, 2025, Secretary Landry asked the EAC to independently consider the alternative option—which would require the same information as the proposal the EAC had just rejected, only on a separate attachment rather than on the form itself. Ex. 8 at 2, ECF No. 1-9. On November 20, 2025, the Secretary wrote to the EAC again, requesting that it also reconsider its initial decision too. Ex. 10 at 3, ECF No. 1-11. In January 2026, the EAC again rejected the Secretary's request. Ex. 11, ECF No. 1-12. The EAC explained that the requested information, whether in Box 6 itself as under Option 1(A) or through additional documentation under Option 1(B), posed a high likelihood of confusing voters. Ex. 11 at 17, ECF No. 1-12. The EAC emphasized that, despite the "large volume of Louisiana's submission," no evidence had been provided to suggest that potential non-citizens removed from the voter rolls had registered using the federal form. Ex. 11 at 18, ECF No. 1-12. Without this showing, the EAC could not adequately assess the potential harm Louisiana's request sought to remedy. Ex. 11 at 18, ECF No. 1-12. Moreover, the EAC explained that, regardless of any factual showing, granting Louisiana's request would require it to usurp the role of Congress and act contrary to Supreme Court precedent. Ex. 11 at 18, ECF No. 1-12. The two Commissioners who voted to grant the State's request believed that Option 1(B) would permit Louisiana to collect necessary information.. Ex. 11 at 10, ECF No. 1-12.

## II.    Louisiana sued the EAC.

On April 14, 2026, the State of Louisiana, by and through its Attorney General, Liz Murrill, and Secretary of State Nancy Landry, filed this suit against the EAC and its Executive Director Brianna Schletz, alleging that they violated the NVRA and the Administrative Procedure Act ("APA") by denying Louisiana's requested changes to the state-specific instructions on the federal voter registration form. Compl. ¶¶ 1, 51–91.

Plaintiffs contend that the EAC has a nondiscretionary duty to modify state-specific instructions on the federal voter registration form such that they accurately reflect state law, and that the EAC's decision to reject Louisiana's request constitutes "agency action unlawfully held." Compl. ¶¶ 59, 63. Similarly, Plaintiffs allege that the EAC's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because no explanation was given to support the EAC's conclusion that the requested changes would prove confusing to voters, nor that Option 1(B) was similar to a request the Commission already rejected several years ago. Compl. ¶¶ 65, 72–74. Plaintiffs further allege that the EAC exceeded its authority under the NVRA by rejecting Louisiana's requested changes, and that, in so far as the EAC believes it possesses the right to deny states from requesting information necessary to enforce voter qualifications, the EAC exceeded any authority Congress could lawfully delegate. Compl. ¶¶ 81–83. Ultimately, Plaintiffs claim that the NVRA, 52 U.S.C. § 2508, is unconstitutional because it infringes on Louisiana's authority to set voter qualifications by conditioning them on what federal agencies deem "necessary," and that the EAC's decision is therefore *ultra vires*. Compl. ¶¶ 87–91.

Plaintiffs request vacatur of the EAC's decision; declaration that the National Voter Registration Act is unconstitutional as applied here; and injunctive relief preventing the EAC from

6

rejecting Louisiana's state-specific instructions to the federal voter registration form. Compl. at 25–26 ¶¶ A–D (Prayer for Relief).

### III.    Plaintiffs' suit threatens NCJW and its respective members' interests.

Proposed Intervenor National Council of Jewish Women, Greater New Orleans Chapter is a nonprofit organization that works to improve the quality of life for women, children, and families, and safeguard individual rights and freedoms, consistent with Jewish values. Decl. ¶ 3. Among those is the right to vote. Decl. ¶ 4. Founded in 1897, the Greater New Orleans Chapter has more than 1,000 dues-paying members, and voter registration assistance is one of the core services that it offers in the community. Decl. ¶¶ 3, 5. NCJW and its coalition partners coordinate voter registration drives at every public high school in New Orleans, where its volunteers offer students paper registration forms, and set up computer banks where students can register to vote online. In 2024, NCJW registered approximately 2,000 students to vote. Decl. ¶ 6.

Plaintiffs' requested changes to the federal voter registration form would impede NCJW's ability to do this essential work, making it impossible to register voters at the current rates. Decl. ¶ 7. Many of the individuals NCJW registers will be unable to provide additional information that would be required under Plaintiffs' requests. Decl. ¶ 9. About half of the students NCJW helps register lack basic information needed to register, requiring NCJW to work with school administrators to locate this information. Decl. ¶ 8. Requiring voters to submit *even more* information will impose additional barriers during the registration process, create more work for NCJW, and require it to expend more resources. Decl. ¶ 12. For example, even if NCJW had the technology to scan or copy documents that might be required by Option 1(B) of Plaintiffs' EAC requests, doing so would make registration more time consuming—and students less likely to complete it at all. Decl. ¶ 10.

Additional proof-of-citizenship requirements will also harm NCJW's members, some of whom are qualified Louisiana voters and are not currently registered to vote. Decl. x. Some of these members simply do not know the answers to questions Plaintiffs have proposed adding to the federal form, or do not possess the documentation required by Option 1(B). These requested changes also risk harming, in particular, NCJW's members who are naturalized citizens. Decl. ¶ 11. Plaintiffs' request for identifiers like naturalization numbers necessarily subjects these members to additional scrutiny that natural-born citizens are exempt from. Decl. ¶¶ 9, 11. The requests also stand to impact members who lack documents in their current legal name, including those who have changed their names after marriage. Decl. ¶ 11. Given Plaintiffs' intent to check applicants' citizenship status in various government databases, these members risk being mismatched or not matched at all—and then prevented from registering to vote. Decl. ¶ 9.

## LEGAL STANDARD

Under Rule 24, the court "must" permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Even if a proposed party is not entitled to intervention as of right, the court "may" permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(1), (3).

"It is the movant's burden to establish the right to intervene, but Rule 24 is to be liberally construed." *La Union del Pueblo Entero v. Abbott* ("*LUPE*"), 29 F.4th 299, 305 (5th Cir. 2022) (citation modified) (reversing denial of intervention). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id.* (citation modified); *see*

8

*also see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at \*4 (5th Cir. Mar. 22, 2022) (reversing denial of intervention and noting Fifth Circuit's "broad policy favoring intervention" and the intervenors' "minimal" burden). "[T]here is no Article III requirement that intervenors have standing in a pending case." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006).

## ARGUMENT

### I.      NCJW is entitled to intervention as of right.

NCJW is entitled to intervention as of right because (1) its motion is timely, (2) the prospect of an adverse ruling threatens to impair its mission-critical voter-engagement programs, its members' ability to register to vote, and its ongoing litigation in the Middle District, and (3) none of the existing government parties adequately represent NCJW's distinct, privately held interests.

### A.      This motion is timely.

NCJW's motion is timely. Courts consider "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). Plaintiffs filed their Complaint on April 14; this motion follows less than a week later and before any other significant developments have occurred. NCJW agrees to abide by any case schedule set by the Court or agreed to by the existing parties. Given that these proceedings are at the outset, and because there is no possible risk of prejudice to the other parties, NCJW meets the timeliness requirement. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016) (reversing denial of intervention and deeming motion to intervene timely even when filed after discovery had commenced). Because there has been no delay, Plaintiffs cannot claim any prejudice from delay. NCJW, in contrast, would be prejudiced if intervention is denied, as explained below.

**B.      Plaintiffs' suit threatens to impair NCJW's significantly protectable interests.**

Plaintiffs' suit threatens both NCJW's organizational interests and the interests of its members. Requiring registrants to provide even more information than what is currently required by the federal voting registration form will make it impossible for NCJW to register voters at its current rate. Decl. ¶ 7. In addition to NCJW's own organizational interests, the interests of NCJW's unregistered members, many of whom are naturalized citizens, could be impaired because these members face a serious risk that they will be unable to register to vote. Decl. ¶ 11. This is precisely why NCJW filed suit against Plaintiff Landry over the state law that prompted Louisiana to pursue the EAC requests at issue in this case. *See* Compl., *NCJW*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Aug. 1, 2025), ECF No. 1.

For a party to intervene as a matter of right, Rule 24 requires a "significantly protectable interest," *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)), which exists where "the law deems [it] worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015). Intervention does not require movants to identify a property interest, pecuniary interest, or even a legally enforceable interest. *See id.* at 658–59. And when a case "involves a public interest question," the interest requirement "may be judged by a more lenient standard." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (reversing denial of intervention).

NCJW has significantly protectable organizational interests in ensuring that its voter registration drives continue to function at its current levels. Decl. ¶ 5–6. Courts routinely find that organizations have significant protectible interests in preserving and pursuing their own mission-critical organizational work, particularly when it comes to protecting the right to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-1867-SLE, 2024 WL 3454706, at \*3

(N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020).

NCJW also has significant organizational interests in preserving its resources. If Plaintiffs succeed in adding additional requirements to the federal voter registration form, NCJW will be forced to commit additional resources toward helping registrants find the newly required information—like an immigration number, county of birth, or mother's maiden name—that they might not have easy access to. Decl. ¶ 11–12. *See LUPE*, 29 F.4th at 306 (recognizing political party had a "legally protectable interest" because it "expend[s] significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process"); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (granting intervention where plaintiffs' requested relief would require "the expenditure of additional time and resources" by intervenors) (cleaned up).

The same is true for NCJW's membership, which includes unregistered voters who might be precluded from registering should they be required to provide information that they do not know, do not possess, or is likely to lead to inaccurate matching errors. Decl. ¶ 10. The right to vote is unquestionably a significantly protectable interest that satisfies Rule 24(a). "[V]oting is of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ("The political franchise of voting . . . is regarded as a fundamental political right" because it is "preservative of all rights"). Accordingly, courts have widely recognized that voters have significantly protectable interests in preserving their constitutional right to vote. *See, e.g., League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011)

11

(collecting cases and reversing denial of intervention where voting rights interest was sufficient to satisfy Rule 24(a)(2)). Indeed, risk to such an interest suffices to establish Article III standing, a higher burden than Rule 24's interest requirement. *See Wal-Mart Stores*, 834 F.3d at 566 n.3 There is no serious dispute that NCJW's members—who may be unable to register to vote should Plaintiffs be granted relief—have a significant interest in this action.

The significant interests above are at serious risk of being "impair[ed]" in this case. Fed. R. Civ. P. 24(a)(2). To satisfy this prong, NCJW need only demonstrate that there is a "possibility that [its] interest could be impaired or impeded" if it is not allowed to intervene. *LUPE*, 29 F.4th at 307. A judgment in Plaintiffs' favor would do just that. Adding even more requirements to the federal voter registration form can only make registering voters more taxing; the process certainly will not become any easier. Because that outcome will directly impair NCJW's mission and resources, *see* Decl. ¶ 12, NCJW "stand[s] to gain or lose by the direct legal operation of the district court's judgment on [Plaintiffs'] complaint." *Teague*, 931 F.2d at 261.

A judgment in Plaintiffs' favor also stands to impair the interests of NCJW's membership, not least of all because it would disproportionately burden the communities NCJW serves. NCJW has members who were not born in the United States and have since become naturalized citizens. Decl. ¶ 9. Under Plaintiffs' proposed changes to the federal form, these members would need to provide their unique immigration identifiers to register to vote, an additional requirement that Louisiana would not impose on natural-born citizens. Decl. ¶ 11. Likewise, NCJW's members include individuals who changed their names after marriage. Decl. ¶ 11. Given Plaintiffs' intent to check voter registration applicants' citizenship status in various government databases, members who have changed their names also risk being subjected to additional requirements or exclusion from the franchise because they may be mismatched or not matched at all. Decl. ¶ 11. This is

12

quintessential impairment. Because "[t]he right to vote . . . is of the essence of a democratic society," such an outcome "strike[s] at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Finally, NCJW's status as a Plaintiff in the Middle District Litigation challenging the same subject matter at issue here independently demonstrates possible impairment. "The Fifth Circuit has held that the *stare decisis* effect of an adverse judgment constitutes a sufficient impairment to compel intervention." *Sierra Club v. Glickman*, 82 F.3d 106, 109–10 (5th Cir. 1996); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (noting an intervenor's interest "is impaired by the stare decisis effect of the district court's judgment"). These concerns arise even where a court's decision could have mere "persuasive effects" on other courts. *Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004). In the Middle District, NCJW challenged the very same EAC requests at issue here under the Materiality Provision of the Civil Rights Act. *See* Compl. ¶¶ 203–11, *NCJW*, No. 3:25-cv-000676-JWD-SDJ, ECF No. 1. The gravamen of that claim is that "[t]he submission of place of birth, sex, and mother's maiden name is not material to whether an individual is qualified to vote" under Louisiana law. *Id.* ¶ 210. Here, by contrast, Plaintiffs allege that their requests to the EAC "reflect the voter qualification and registration laws of the State of Louisiana" and "enable Louisiana election officials to assess the eligibility of applicants and administer voter registration and other parts of the election process." Compl. ¶ 81. Should this Court enter judgment agreeing with Plaintiffs, that "ruling in [Plaintiffs'] favor could be relied upon as a precedent" in NCJW's pending suit. *Glickman*, 82 F.3d at 110. Thus, the "failure to allow [NCJW] an opportunity to advance its own theories" in this suit will, if Plaintiffs prevail, "as a practical matter impair or impede [its] ability to protect [its] interest" in the Middle District. *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828–29 (5th Cir. 1967) (alterations in

13

original). This is a "practical disadvantage which warrants intervention of right." *Stone*, 371 F.3d at 1310 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989)).

### C.    No other party adequately represents NCJW's interests.

NCJW cannot rely on Defendants to adequately represent its interests. Demonstrating inadequate representation generally "present[s] proposed intervenors with only a minimal challenge." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022). Proposed Intervenors "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *LUPE*, 29 F.4th at 307–08 (quoting *Texas*, 805 F.3d at 661); *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (describing this burden as a "minimal" one). Courts are "liberal in finding" this requirement satisfied; "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. 2024).

In contrast to NCJW, each of the existing Defendants is a public entity or official. They must "bear in mind broader public-policy implications," whereas private litigants—like the NCJW— seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538–39). Accordingly, courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003), because their interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Although there is a "presumption" of adequate representation when the existing party "is a governmental body or officer charged by law with representing the interests" of the intervenor, that presumption is "overcome by showing that the intervenor's 'interest is in fact different from

14

that of the' governmental party 'and that the interest will not be represented by' the existing governmental party. *LUPE*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 661–62). That is the case here, where NCJW has a singular focus in defending its members' ability to register to vote, serving its specific mission, and preserving its resources. Unlike NCJW, the federal defendants do not have any interest in preserving NCJW's organizational resources, preserving NCJW's get-out-the-vote effort, or even protecting NCJW's individual members. As such, "there are reasons to believe [NCJW's] interests are less broad than those of the governmental defendants, which may lead to divergent results." *Id.* The fact that NCJW might seek the same ultimate outcome as federal defendants is not the controlling question. "[A] prospective intervenor must intervene on one side of the 'v.' or the other and will have the same general goal as the party on that side. If that's all it takes to defeat intervention, then intervention as of right will almost always fail." *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020).

This mismatch of interests is particularly acute here given the Executive Branch has pursued policy objectives strongly at odds with the EAC's rejection of Louisiana's proposal, and is more closely aligned with the relief Plaintiffs seek. In 2025, for example, the President signed Executive Order 14248 entitled "Preserving and Protecting the Integrity of American Elections," which, among other things, ordered the EAC to add a documentary proof of citizenship requirement to the federal voter registration form. That section of the Executive Order is currently enjoined. *See League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 87–88 (D.D.C. 2025). Despite the EAC's apparent reluctance to add further proof-of-citizenship requirements to the federal form (as evidenced here), the Department of Justice is nevertheless appealing that injunction on behalf of the EAC. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-05476 (D.C. Cir. Dec. 31, 2025). Accordingly, there is serious reason

to doubt that the federal government will adequately represent NCJW's interests in vigorously defending the EAC's decision to *reject* proof-of-citizenship requirements here. In fact, Proposed Intervenor cannot expect that the Federal Defendants will defend the EAC's decision *at all*. Just last year, for example, the Department of Justice withdrew one of its chief constitutional defenses of the SEC's administrative enforcement proceedings, seemingly to align with another of the President's executive orders. *See* Notice of Change in Position, *Lemelson v. SEC*, No. 1:24-cv-02415-SLS (D.D.C. Feb. 18, 2025), ECF No. 16; Exec. Order No. 14215 § 2(a), 90 Fed. Reg. 10447 (Feb. 18, 2025). Without NCJW as a party, there may be no one opposing Plaintiffs' claims.

## II.    NCJW satisfies the requirements for permissive intervention.

NCJW also satisfies the requirements for permissive intervention. Rule 24(b) provides for permissive intervention upon timely application when the intervenor "has a claim or defense that shares with the main action a common question of law or fact," and granting intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *BellSouth Telecomm. LLC v. New Orleans Teleport Inc.*, No. 6:16-CV-001624, 2017 WL 4898833, at *2 (W.D. La. Oct. 30, 2017) (quoting Fed. R. Civ. P. 24(b)(2)). As with intervention as of right, the rule on permissive intervention "is to be liberally construed." *Wal-Mart Stores*, 834 F.3d at 565 (quoting *Texas*, 805 F.3d at 656). "Intervention should generally be allowed where no one would be hurt and greater justice could be attained." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citation modified).

Each relevant consideration weighs in favor of granting permissive intervention here. NCJW's defenses in this case concern common questions of law to those presented by the Complaint. *See generally* Ex. 1 (Proposed Answer). Its timely motion to intervene will result in no conceivable prejudice to any existing party, nor will it cause delay, given NCJW agrees to be bound by any case schedule set by the Court. Courts regularly grant permissive intervention to

16

ensure actual voters (or organizations representing them) have a say in litigation concerning their rights. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. 2:24-cv-2987-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (finding advocacy organizations met permissive intervention standards); *Pub. Int. Legal Found., Inc., v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-00660-TDS-JEP, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting voters to intervene). NCJW's participation in this case will simply ensure that a robust defense of the EAC's decision is offered by the very organization and voters who stand to be most adversely affected by its vacatur.

## CONCLUSION

For the reasons stated above, Proposed Intervenor respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2), or, in the alternative, permit intervention under Rule 24(b).

17

Respectfully submitted this 17th day of April, 2026.


s/ *William Most*

| | |
|---|---|
| William Most<br>**Most & Associates**<br>201 St. Charles Ave, Suite 2500, # 9685<br>New Orleans, LA 70170<br>Tel: (504) 509-5023<br>williammost@gmail.com | David R. Fox*<br>Katie Chamblee-Ryan*<br>James J. Pinchak*<br>Tori A. Shaw*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave. NW, Suite 400<br>Washington, DC 20001<br>(202) 968-4490<br>dfox@elias.law<br>kchambleeryan@elias.law<br>jpinchak@elias.law<br>tshaw@elias.law<br><br>* *Pro hac vice* application forthcoming<br><br>*Counsel for Proposed Intervenor the National Council of Jewish Women – Greater New Orleans Chapter* |

18

## CERTIFICATE OF SERVICE AND CONSENT SOUGHT

I hereby certify that on April 17, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system. Additionally, counsel for Plaintiffs were advised by electronic email on April 17, 2026, of this filing and were provided with Proposed Intervenor's proposed Answer. Counsel for Plaintiffs indicated they oppose intervention. Counsel for Defendants have not yet appeared in this case.

*s/ William Most*
Counsel for Proposed Intervenor the
National Council of Jewish Women –
Greater New Orleans Chapter