## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **THE STATE OF LOUISIANA**, by and through its Attorney General, **LIZ MURRILL**; and **NANCY LANDRY**, Louisiana Secretary of State,<br><br>          *Plaintiffs*,<br><br>  *v.*<br><br>**THE UNITED STATES ELECTION ASSISTANCE COMMISSION**; and **BRIANNA SCHLETZ**, in her official capacity as the Executive Director of the United States Election Assistance Commission,<br><br>          *Defendants*. | Civil Action No. 3:26-cv-01191 |

## PUBLIC INTEREST LEGAL FOUNDATION'S
## <u>MEMORADUM IN SUPPORT OF MOTION TO INTERVENE</u>

**INTRODUCTION**

Citizenship is the most fundamental qualification for voting. In this action, Louisiana seeks to exercise its Constitutional authority to verify this indispensable trait. Plaintiff Public Interest Legal Foundation ("Foundation") has a significant and unique interest in this action. The Foundation has spent the last decade-plus cataloging the failure of the Federal Form's citizenship attestation and its damaging effect on immigrants. Upon this research, the Foundation publicly advocates for change. Though effective, these efforts are costly. If successful, Louisiana's efforts will unburden the Foundation. Intervention is therefore warranted.

**ARGUMENT**

I.      **The Foundation is Entitled to Intervene as a Matter of Right.**

Rule 24 is "liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). It grants intervention rights to a movant who (1) files a "timely" application; (2) has "an interest relating to the property or transaction which is the subject of the action"; (3) is "so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest"; and, (4) is "inadequately represented by the existing parties to the suit." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

A.  **The Foundation's Motion is Timely.**

The Fifth Circuit considers four facts to evaluate timeliness: "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)). All factors favor the Foundation.

1

First, the Foundation promptly filed this motion shortly after learning about this action and less than three weeks after the Complaint was filed. (*See* Dkt. 1.) In other words, the Foundation did not wait to intervene beyond what was necessary to prepare this motion.

Second, the prejudice factors favor intervention. Existing parties will face no prejudice because this case is only weeks old and there is no schedule to presently disrupt. No responsive pleading has been filed and the Court may need to resolve other pending intervention motions before even establishing a schedule. On the other hand, the Foundation will be prejudiced if intervention is denied, due to its interest in this action.

Last, no unusual circumstances make this motion untimely. The plaintiff is not seeking expedited relief, meaning this case will proceed on an ordinary timeline. Further, motions to intervene as defendant were filed on April 17, 2026. (ECF Nos. 3-4.) At most, the Foundation's motion would constitute only a minimum delay to the resolution of the claims, if any delay at all. *Ass'n of Prof. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (finding that five-month delay was not untimely).

### B.  The Foundation Has a Substantial Interest in this Action.

An interest will support intervention when it is "concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). The Foundation has such an interest.

The Foundation has one of the longest running programs dedicated to protecting the integrity of the electoral process and accurate voter rolls, Proposed Complaint ("PC") ¶ 15 — interests Congress expressly recognized when it passed the National Voter Registration Act of 1993, 52 U.S.C.S. § 20501(b)(3)-(4). The study and remediation of alien registration and its impact on citizens and immigrants is a core component of the Foundation's programming and

2

organizational mission. PC ¶¶ 16-30. The Foundation has dedicated considerable resources to gathering government records, litigating, monitoring, testifying before lawmakers, speaking to the public, and preparing written, solution-driven, reports. PC ¶ 17. Resources for some of these activities were recently dedicated to Louisiana and the Foundation's work will continue there, absent relief. PC ¶¶ 29-30. All of this requires substantial time and money, much of which would be spent elsewhere if the problem is solved. PC ¶ 34.

The Foundation's interest is not academic—it is aimed at safeguarding citizens' voting rights, *see* 52 U.S.C. § 20501(b)(1), and protecting immigrants from making mistakes that might jeopardize their chances at naturalization, or worse, get them deported. *See, e.g.* Matthew Kelly, *Former Kansas mayor accused of voting illegally reaches deal to avoid jail time*, Kansas City Star (April 20, 2026), https://www.kansascity.com/news/politicsgovernment/article315476036.html (last accessed April 22, 2026); Gutierrez and Gardella, *Grandmother Deported for Voter Fraud Leaves U.S. in Tears*, NBC News (Aug. 5, 2017), https://www.nbcnews.com/politics/immigration/grandmother-deported-voter-fraud-leaves-u-s-tears-n789766 (last accessed April 23, 2026).

### C. The Foundation's Ability to Protect its Interest Will be Impaired Absent Intervention.

The Foundation must show only "a *possibility* that [its] interest could be impaired or impeded." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022). The Foundation can do that.

The Foundation's work—and Louisiana's experience—reveals that the problems attendant to alien registration are not solved. *See* PC ¶ 30; (ECF No. 1 ¶ 46.) Right now, citizenship verification is an honor system. Louisiana wants to make it a verified system, placing the onus of verification on the State using readily available information in the hands of applicants for voter

3

registration. If Louisiana or the Foundation is successful in this action, the State will have a solution to prevent alien registration, the Foundation's organizational mission of ensuring only eligible registrants remain on the rolls will be advanced, and the Foundation will be unburdened of its work concerning alien registration in Louisiana. In simplest terms, if Louisiana has a solution for alien registration, the Foundation will devote resources to other states. Monitoring Louisiana for a problem that does not exist will be unnecessary.

If Louisiana is not successful—and only the failed honor system remains—the Foundation's work must continue in Louisiana. The Foundation will be forced to spend time, energy, and money gathering records, analyzing data, and proposing solutions through advocacy and written work. *See La Union del Pueblo Entero*, 29 F.4th at 307 (finding impairment factor satisfied where movant "will have to expend resources to educate their members on the shifting situation in the lead-up to the 2022 election"). The impact on the Foundation's organizational mission will persist indefinitely.

### D. Louisiana's Interests Differ from the Foundation's Interests.

An intervening party need not show that the representation by existing parties "will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345 (5th Cir. 2014). What must be shown is representation "may be" inadequate. *See Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002). The Foundation can make this "minimal" showing. *Id*.

Based on its pleading, Louisiana's case depends largely on its Constitutional authority to set voter qualifications. (*See, e.g.*, ECF No. 1 ¶ 1.) While the Foundation agrees with that premise, the Foundation holds no interest when it comes to that sovereign authority. Instead, the Foundation is primarily concerned with its mission and allocation of its limited resources. Government actors are not legally bound to protect such private interests, and the Fifth Circuit has accordingly found

4

government representation possibly inadequate in cases like this, even though there is a presumption that government entities will provide adequate representation. *See La Union del Pueblo Entero*, 29 F.4th at 309 (granting motion to intervene where movant's interest included "expenditure of their resources"); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (reversing order denying intervention and explaining, "The government must represent the broad public interest, not just the economic concerns of the timber industry.").

The Foundation and Louisiana also diverge with respect to presentation of evidence. *See Sierra Club*, 18 F.3d at 1207 ("The claim that the movants' interests are adequately represented by their participation in the development of the Forest Service's land management ignores the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal."). While the necessity of the requested changes to the Federal Form may play a role here, necessity is factually demonstrated thus far by the number of aliens found presently registered to vote. (ECF No. 1 ¶ 46.) In contrast, the Foundation's work and its presentation in this case will largely focus on the failure of the Federal Form and evidence of prior removals in Louisiana and elsewhere. (*See* ECF No. 1 ¶ 46 ("These data pertained to current registrants and their voting history as of May 2025 and did not include historical data regarding the voting history of any previously canceled registrants.").) *See* PC ¶¶ 16-30. The Federal Form simply asks applicants to check a box—yes or no—to the citizenship question. This system often fails regardless of the applicant's answer. *See* PC ¶ 24. Even "no" answers result in registration due to errors made by election officials. *See* PC ¶ 24. Louisiana has not and is unlikely to point the finger at itself or other election officials. Yet the potential for government errors is an additional reason Louisiana's requested changes are necessary.

Nor has Louisiana alleged an interest in protecting the individual rights of citizen voters—who are the ultimate object of the Foundation's advocacy and work. Indeed, every vote by an ineligible alien cancels out the vote of a United States citizen.

Nor will Louisiana present evidence that the Federal Form in its current state is harmful to immigrants. Numerous examples demonstrate that simple mistakes—like checking "yes" to the citizenship question—can delay naturalization applications or even result in denial, or worse, deportation. Indeed, the Foundation has obtained letters from immigration officials asking would-be citizens to verify their registration and voting history, PC ¶ 26., as well written requests from alien asking to cancel their voter registration, PC ¶ 27.

## II.    Alternatively, This Court Should Grant Permissive Intervention.

If the Court denies intervention as a matter of right, the Court should exercise its "great discretion" to grant permissive intervention. *United States ex rel. Hernandez v. Team Fin.*, L.L.C., 80 F.4th 571, 575 (5th Cir. 2023). Permissive intervention is allowed where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

The Foundation has such a claim because its interest and causes of action arise from the same set of facts. The Foundation also advances similar legal theories. Furthermore, the Foundation has considerable expertise in the study and remediation of alien registration, which will provide this Court with a unique and relevant perspective.

"Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Sierra Club*, 18 F.3d at 1205 (citations and quotations omitted). As explained, no delay or prejudice will result through the Foundation's intervention. *See* Fed. R. Civ. P.

6

24(b)(3). Instead, the Foundation's participation will help ensure that this controversy is resolved fairly and completely.

## CONCLUSION

For the foregoing reasons, the Foundation respectfully request this Court grant its request to intervene in this action.

Dated: May 4, 2026.

Respectfully submitted,

/s/ *Mark G. Montiel, Jr.*
MARK G. MONTIEL, JR. (#36122)
**MONTIEL HODGE, LLC**
400 Poydras Street, Suite 2325
New Orleans, Louisiana 70130
Telephone: (504) 323-5885
Facsimile: (504) 308-0511
mmontiel@montielhodge.com

/s/ *Noel H. Johnson*
Noel H. Johnson*
   *Lead Attorney*
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Suite 700
Alexandria, VA 22314
Tel: (703) 745 5870
njohnson@PublicInterestLegal.org
*\* Pro Hac Vice application forthcoming*
*Attorneys for Plaintiff Public Interest Legal*
*Foundation*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 4th day of May 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

/s/ *Mark G. Montiel, Jr.*
**MARK G. MONTIEL, JR.**

7