**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

THE STATE OF LOUISIANA, by and through its Attorney General, LIZ MURRILL; and NANCY LANDRY, Louisiana Secretary of State,

*Plaintiffs*,

v.

THE UNITED STATES ELECTION ASSISTANCE COMMISSION; and BRIANNA SCHLETZ, in her official capacity as the Executive Director of the United States Election Assistance Commission,

*Defendants*.

Case No. 3:26-cv-01191-TAD-KDM

(Hon. Terry A. Doughty)

**NATIONAL COUNCIL OF JEWISH WOMEN, GREATER NEW ORLEANS CHAPTER'S MEMORANDUM IN SUPPORT OF [PROPOSED] MOTION TO DISMISS**

# TABLE OF CONTENTS


BACKGROUND ..... 3

I. Louisiana enacted Act 500, requiring proof of citizenship to register to vote. ..... 3

II. Secretary Landry was required to seek permission from the EAC to add new requirements to Louisiana's state-specific instructions for the Federal Form. ..... 4

III. The EAC rejected Louisiana's requests. ..... 5

IV. Louisiana sued the EAC. ..... 6

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. The NVRA grants the EAC discretion to reject Louisiana's requests. ..... 8

A. The EAC did not exceed its statutory authority (Count III). ..... 8

B. The EAC did not "unlawfully withhold" its approval (Count I). ..... 12

1. The EAC was not legally required to approve Louisiana's requests. ..... 12

2. The EAC did not "withhold" action. ..... 14

II. The NVRA is constitutional (Counts III and IV). ..... 15

CONCLUSION ..... 19

CERTIFICATE OF SERVICE ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) ........ passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 7

*Benson v. U.S. Dep't of Educ.*,
No. 4:24-CV-176, 2026 WL 184282 (S.D. Ga. Jan. 23, 2026) ........ 7

*Cheejati v. Blinken*,
106 F.4th 388 (5th Cir. 2024) ........ 12, 13

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ........ 9, 12

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*,
59 F.4th 180 (5th Cir. 2023) ........ 12

*Frank v. City of Ville Platte*,
No. 6:17-CV-01351, 2019 WL 1064261 (W.D. La. Mar. 6, 2019) ........ 6

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009) ........ 9

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
593 F.3d 923 (9th Cir. 2010) ........ 14

*Kobach v. U.S. Election Assistance Comm'n*,
772 F.3d 1183 (10th Cir. 2014) ........ 11, 12, 18, 19

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........ 11, 12, 16, 17

*Louisiana v. Biden*,
No. 2:21-CV-778, 2021 WL 4312502 (W.D. La. Aug. 23, 2021) ........ 9

*Louisiana v. United States*,
948 F.3d 317 (5th Cir. 2020) ........ 13

*Marshall Cnty. Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) ........ 8

*Matter of Durand-Day*,
134 F.4th 846 (5th Cir. 2025) .......... 10

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 13, 14

*Norwood v. Perdue*,
No. 3:19-CV-00256, 2020 WL 762860 (W.D. La. Feb. 14, 2020) .......... 6

*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .......... 7

*Porter v. Califano*,
592 F.2d 770 (5th Cir. 1979) .......... 15

*Prysmian Cables & Sys. USA, LLC v. United States*,
756 F. Supp. 3d 1337 (Ct. Int'l Trade 2025) .......... 14

*Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
No. 5:24-CV-05085-ECS, 2025 WL 2783499 (D.S.D. Sept. 30, 2025) .......... 15

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
563 U.S. 401 (2011) .......... 9

*Smiley v. Holm*,
285 U.S. 355 (1932) .......... 16, 17, 18

*Tashjian v. Republican Party of Conn.*,
479 U.S. 208 (1986) .......... 18

*Trout Point Lodge, Ltd. v. Handshoe*,
729 F.3d 481 (5th Cir. 2013) .......... 9

*United States v. Lauderdale County*,
914 F.3d 960 (5th Cir. 2019) .......... 9

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) .......... 16

*W. Union Tel. Co. v. FCC*,
541 F.2d 346 (3d Cir. 1976) .......... 9

*Wade v. Home Depot U.S.A. Inc.*,
No. 3:18-CV-00739, 2018 WL 4355200 (W.D. La. Sept. 12, 2018) .......... 7

*Ysleta Del Sur Pueblo v. Texas*,
596 U.S. 685 (2022) .......... 10

**Statutes**

18 U.S.C. § 611 .... 3

42 U.S.C. § 1973gg(b) .... 11

5 U.S.C. § 706(2)(A) .... 15

5 U.S.C. § 706(1) .... 12, 13, 14

5 U.S.C. § 706(2)(C) .... passim

52 U.S.C. § 20501 .... 11

52 U.S.C. § 20505(a)(1) .... 4, 9

52 U.S.C. § 20505(a)(2) .... 10

52 U.S.C. § 20508(a)(2) .... 4, 9

52 U.S.C. § 20508(b)(1) .... 4, 10

52 U.S.C. § 20508(b)(2)(A)–(B) .... 3, 9, 10, 17

La. Const. of 1812, art. II, § 8 .... 3

La. R.S. § 18:104(C)(1)(a) .... 3

La. R.S. § 18:104(D)(1) .... 3

La. R.S. § 18:104(D)(2) .... 1, 3

U.S. Const. art. 1, § 2, cl. 1 .... 4

U.S. Const. art. 1, § 4, cl. 1 .... 18

## INTRODUCTION

This lawsuit is a transparent attempt to overturn binding Supreme Court precedent and impose unlawful requirements on Louisianians registering to vote.

In 2024, Louisiana enacted a law requiring prospective voters to provide "proof of United States citizenship" at registration. La. R.S. § 18:104(D)(2). To implement it, Secretary of State Nancy Landry proposed requiring voter-registration applicants to disclose either a citizenship number or their place of birth, sex, and mother's maiden name—information she contends would allow Louisiana to cross-check registrants' citizenship against various government and nongovernment databases. To impose those requirements on applicants registering for federal elections, Secretary Landry was required to seek approval from the federal Election Assistance Commission ("EAC"). Throughout 2025, she repeatedly did so. The EAC denied her requests.

The EAC had discretion to do that. Congress created a standardized voter-registration form (the "Federal Form") to serve as a "simple means of registering to vote in federal elections," "[n]o matter what procedural hurdles a State's own [registration] form imposes." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 12 (2013) ("*ITCA*"). States remain free to establish registration requirements for their own elections. But as the Supreme Court explained in *ITCA*—a 7–2 decision written by Justice Scalia—a State wishing to add new requirements to the Federal Form must send a "request" to the EAC, which the EAC has authority to "reject[]." *Id.* at 19.

*ITCA* also explains the standard governing that decision. Congress determined that the Federal Form may require only the information "necessary" to determine prospective registrants' eligibility to vote. *Id.* at 18–19. Thus, the EAC considered whether Louisiana's additional requirements were "necessary" to ensure that registrants are U.S. citizens—and ultimately denied its request.

*ITCA* provides a path for challenging the EAC's decision: a State that disagrees with the EAC's rejection may bring a challenge under the Administrative Procedure Act seeking to "establish in a reviewing court that a mere oath [of citizenship] will not suffice to effectuate its citizenship requirement," or that the EAC's rejection was "arbitrary." *Id.* at 20. Although Louisiana proceeds under the APA, only Count II, which alleges that the EAC's decision was arbitrary and capricious, actually takes the approach *ITCA* prescribed.

Louisiana's remaining claims are geared toward overturning *ITCA*, not complying with it. Indeed, Louisiana says so expressly, arguing that "[i]nsofar as *ITCA*" contradicts its theories, "it should be overruled." Compl. ¶ 91. *ITCA* made clear that the EAC has the authority to "prescribe" the Federal Form's contents and may approve or reject States' "request[s]" to alter its requirements. *Id.* at 5, 19. Yet Louisiana now alleges that the EAC has a "nondiscretionary" duty to approve any changes Louisiana requests. *See* Compl. Counts I, III. And although *ITCA* held that the Elections Clause empowers Congress to regulate registration for federal elections—and to preempt contrary state requirements—Louisiana now asserts that Congress lacked that authority and that the federal voter-registration regime is therefore unconstitutional. *See* Compl. Count IV. Because Counts I, III, and IV are all predicated on theories that *ITCA* forecloses, they must be dismissed.

That leaves just Plaintiffs' arbitrary-and-capricious claim. Although that claim is meritless, it at least nominally conforms with the kind of relief *ITCA* prescribed for these circumstances. *See* Compl. Count II; *ITCA*, 570 U.S. at 20. This Court should grant the motion to dismiss and narrow this action to that claim alone. Louisiana may then seek to prove it at summary judgment, after the administrative record has been produced.

## BACKGROUND

### I. Louisiana enacted Act 500, requiring proof of citizenship to register to vote.

For more than two centuries, eligibility to vote in Louisiana elections has been conditioned upon United States citizenship. Compl. ¶ 23; *see* La. Const. of 1812, art. II, § 8. Federal law likewise prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. For decades, Louisiana has enforced its citizenship requirement by requiring voter-registration applicants to attest under penalty of perjury that they are citizens. *See* La. R.S. § 18:104(C)(1)(a), (d); *see also id.* § 18:104(D)(1) (requiring that the voter-registration form ask whether the applicant is a U.S. citizen and instruct non-citizens not to complete the application); 52 U.S.C. § 20508(b)(2)(A)–(B) (federal attestation requirement for registration).

In June 2024, Louisiana enacted Act 500, which requires prospective voters to include "*proof* of United States citizenship" with their voter registration applications. La. R.S. § 18:104(D)(2) (emphasis added).[1] During legislative hearings, the bill's sponsor was asked whether he could provide "any instances in the state where noncitizens have registered or voted." He responded: "Don't know. . . . don't know whether they have or not."[2] He later acknowledged that "the problem might not be great."[3]

[1] Proposed Intervenor NCJW challenged Act 500's proof-of-citizenship requirement in federal court on August 1, 2025. Compl. *NCJW v. Landry*, No. 3:25-cv-000676-JWD-SDJ (M.D. La. Aug. 1, 2025), ECF No. 1. NCJW's suit alleges that Act 500 violates numerous provisions of the National Voter Registration Act. *Id.* ¶¶ 167–202. As relevant here, it also alleges that Louisiana's requests to the EAC would violate the Materiality Provision of the Civil Rights Act. *Id.* ¶¶ 203–211. That litigation remains pending.

[2] Hearing of La. Senate Comm. on Senate & Gov't Affairs, at 1:36:22–35 (Apr. 17, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/04/041724SGA2.

[3] *Id.* 1:52:45.

**II. Secretary Landry was required to seek permission from the EAC to add new requirements to Louisiana's state-specific instructions for the Federal Form.**

To implement Act 500, Secretary Landry sought to require Louisiana voter-registration applicants—including those registering for federal elections—to provide additional information: either a citizenship number or their place of birth, sex, and mother's maiden name, which the Secretary contends would allow Louisiana to cross-check prospective voters' citizenship against national databases.

But voter-registration requirements for federal elections are subject to federal law. The National Voter Registration Act of 1993 ("NVRA") required the EAC to create a standardized "mail voter registration application form," commonly known as the "Federal Form." § 20505(a)(1). The purpose of the Form was to "provide[] a backstop: No matter what procedural hurdles a State's own form imposes, the Federal Form guarantees that a simple means of registering to vote in federal elections will be available." *ITCA*, 570 U.S. at 12–13.

To that end, the NVRA provides that the Federal Form "may require only such identifying information . . . *as is necessary*" to assess applicants' eligibility and administer elections. 52 U.S.C. § 20508(b)(1) (emphasis added). States are not permitted to "requir[e] a Federal Form applicant to submit information beyond that required by the form itself." *ITCA*, 570 U.S. at 20.

Although the NVRA regulates registration for federal elections, the Constitution grants States the authority to establish the underlying qualifications for voting, such as citizenship. *Id.* at 16 (citing U.S. Const. art. 1, § 2, cl. 1). To account for States' varying voter-qualification requirements, the Federal Form also includes state-specific instructions, listed together at the end of the Form, Compl. Ex. 1 at 9–28, ECF No. 1-2, identifying each State's eligibility requirements and any additional information applicants must provide to register. 52 U.S.C. § 20508(a)(2); *see also ITCA*, 570 U.S. at 5–6. Louisiana's state-specific instructions, for example, require that a

registrant "must be a citizen of the United States" and "not currently be under an order of imprisonment for conviction of a felony." Compl. Ex. 1 at 16, ECF No. 1-2.

To impose any new requirements on applicants registering to vote in federal elections, Secretary Landry would need to add those requirements to the state-specific instructions for the Federal Form. But the NVRA does not permit States to add instructions unilaterally. Instead, "[e]ach state-specific instruction must be approved by the EAC," *ITCA*, 570 U.S. at 6. Accordingly, from January to June 2025, the Secretary's office submitted a series of letters asking the EAC to approve one of two alternative methods of collecting additional information Secretary Landry wished to request. In Option 1(A), the Secretary asked that applicants be required to provide the following information on the Federal Form:

- If applicable, the applicant must provide her "unique immigration identifier (e.g. USCIS/Alien Registration Number; Form I-94, Arrival/Departure Record, number; Student and Exchange Visitor Information System (SEVIS) ID number; Naturalization/Citizenship Certificate Number; or Card Number/I-797 Receipt Number)."

- If the applicant has no unique immigration identifier, the applicant must provide (1) her place of birth (State/Province, Country[4]); (2) sex; and (3) if known, the applicant's mother's maiden name.

Compl. Ex. 6 at 2, ECF No. 1-7. If the EAC concluded that the Federal Form lacked sufficient space for that information, Louisiana proposed "Option 1(B)," which would require the applicant to attach a separate document stating this same information. *Id.* at 3.

## III. The EAC rejected Louisiana's requests.

On September 11, 2025, the EAC notified Secretary Landry that it had voted to reject Option 1(A). Compl. Ex. 7, ECF No. 1-8. The EAC explained that the NVRA required it to determine whether a proposed change was "necessary to assess the eligibility of the applicant

[4] NCJW's motion to intervene inadvertently used the word "county" instead of "country." *See* ECF No. 4 at 1, 4, 11. That typographic error has no bearing on the analysis in this motion or NCJW's motion to intervene.

and/or to administer voter registration and other parts of the election process," and whether "Louisiana had put forth evidence of necessity." *Id.* at 5.

After the EAC Commissioners had considered Louisiana's requests and supporting evidence, the EAC Chair called a vote and certified the results. *Id*. The EAC's Executive Director then determined that, because a majority of the commissioners did not conclude that the new requirements were "necessary," the "Commission must reject the request to amend the Louisiana state-specific instructions" for the Federal Form. *Id.*

The EAC also noted in its September letter that it had not separately considered Option 1(B), since Louisiana had presented that option only as a fallback if the Commission concluded that the Federal Form lacked sufficient space to accommodate Option 1(A). *Id.* Accordingly, on September 26, Secretary Landry asked the EAC to reconsider its denial of Option 1(A) and separately consider Option 1(B). Compl. Ex. 8, ECF No. 1-9. On January 16, 2026, the EAC denied that request as well. Compl. Ex. 11, ECF No. 1-12.

**IV. Louisiana sued the EAC.**

On April 14, 2026, Louisiana filed this action against the EAC and its Executive Director, alleging violations of the NVRA and the Administrative Procedure Act ("APA"). Compl. ¶¶ 1, 51–91. Louisiana seeks vacatur of the EAC's decisions, a declaration that the NVRA is unconstitutional as applied here, and an injunction preventing the EAC from rejecting Louisiana's state-specific instructions for the Federal Form. Compl. at 25–26 ¶¶ A–D (Prayer for Relief).

## LEGAL STANDARD

Rule 12(b)(6) "authorizes the dismissal of a case for failure to state a claim upon which relief can be granted." *Norwood v. Perdue*, No. 3:19-CV-00256, 2020 WL 762860, at *2 (W.D. La. Feb. 14, 2020). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts 'to state a claim to relief that is plausible on its face.'" *Frank v. City of Ville Platte*, No. 6:17-

CV-01351, 2019 WL 1064261, at *4 (W.D. La. Mar. 6, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Wade v. Home Depot U.S.A. Inc.*, No. 3:18-CV-00739, 2018 WL 4355200, at *3 (W.D. La. Sept. 12, 2018) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). In an APA suit, a cause of action "may be subject to dismissal for failure to state a claim in the complaint (without any review of the administrative record taking place)" where a plaintiff "has pleaded his case in a way that shows there is no basis for relief from the underlying decision." *Benson v. U.S. Dep't of Educ.*, No. 4:24-CV-176, 2026 WL 184282, at *4 (S.D. Ga. Jan. 23, 2026) (collecting authorities).

**ARGUMENT**

Louisiana asserts four claims in this action. Three of them—Counts I, III, and IV—ask this Court to overturn U.S. Supreme Court precedent.

Louisiana first asserts—contrary to *ITCA* and the text of the NVRA—that once Louisiana determines some additional registration requirement is necessary, the EAC has a "non-discretionary duty" to implement it. *See, e.g.*, Compl. ¶¶ 60, 80. In other words, in Louisiana's view, Congress required EAC approval for changes to the Federal Form, but only as a rubber stamp—not as a meaningful way to enforce the statute's requirements. On that false premise, Louisiana alleges that the EAC acted in excess of its authority and unlawfully withheld its approval when it denied Louisiana's requests. *Id.* ¶¶ 51–63 (Count I), 77–81, 84 (Count III). It did neither. The NVRA's text plainly grants the EAC the authority to approve or deny States' requests to add requirements to the Federal Form, and the Supreme Court in *ITCA* confirmed as much.

Louisiana also mounts a broader attack, contesting the constitutionality of the NVRA itself. It asserts that if the NVRA *does* grant the EAC authority to approve or deny state requests to alter the Federal Form, Congress exceeded its constitutional authority by enacting it. *See* Compl. ¶¶ 82–

84 (Count III). Louisiana also insists that Congress lacked authority to limit the Federal Form to only those requirements "necessary" to assess voter eligibility. *Id.* ¶¶ 85–91 (Count IV). *ITCA* rejects those theories too: the Elections Clause grants Congress the authority to regulate voter registration for federal elections. And while States are empowered to set voter *qualifications*, Congress may regulate the process of proving them, so long as the limits it sets do not effectively nullify the qualifications themselves.

To be sure, *ITCA* contemplated that a State that disagrees with the EAC's rejection could file suit under the APA to "establish in a reviewing court" that the requirements it seeks to add are necessary. *ITCA*, 570 U.S. at 20. But Counts I, III, and IV do not seek relief based on establishing necessity. They rest instead on the faulty assumption that Louisiana's mere averment of necessity is enough to create a nondiscretionary duty, without Louisiana having to prove anything to this Court. That is precisely backwards—and would turn *ITCA* on its head.

Since Counts I, III, and IV are foreclosed by Supreme Court precedent, they fail as a matter of law, and this Court should dismiss them. *See Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Louisiana may then seek to prove its arbitrary-and-capricious claim, Compl. ¶¶ 64–76 (Count II), after the administrative record is produced.

## I. The NVRA grants the EAC discretion to reject Louisiana's requests.

### A. The EAC did not exceed its statutory authority (Count III).

Louisiana asserts that the EAC was *required* to approve Louisiana's requests and that the EAC's contrary decision therefore exceeded its statutory authority, in violation of § 706(2)(C) of the Administrative Procedure Act ("APA"). *See* Compl. ¶¶ 77–81, 84. That claim fails with its premise. The NVRA plainly empowered the EAC, not States, to determine what requirements may be included on the Federal Form.

To state a claim under § 706(2)(C), Louisiana must allege facts showing that the EAC's decision was "in excess of" what the NVRA authorizes. *See* 5 U.S.C. § 706(2)(C). Thus, under § 706(2)(C), the question is "whether the agency has gone beyond what Congress has permitted it to do." *City of Arlington v. FCC*, 569 U.S. 290, 298 (2013). Answering that question requires an analysis of the statute. *Louisiana v. Biden*, No. 2:21-CV-778, 2021 WL 4312502, at *18 (W.D. La. Aug. 23, 2021) ("This sort of claim 'necessarily entails a firsthand judicial comparison of the claimed excessive action with the pertinent statutory authority.'"), *report and recommendation adopted*, No. 2:21-CV-778, 2021 WL 4314795 (W.D. La. Sept. 22, 2021) (quoting *W. Union Tel. Co. v. FCC*, 541 F.2d 346, 354 (3d Cir. 1976)).

Statutory interpretation "begins and, if possible, ends with the language of the statute." *See United States v. Lauderdale County*, 914 F.3d 960, 964 (5th Cir. 2019) (quoting *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013)). The NVRA provides that the EAC shall "develop" a Federal Form "in consultation" with state election officers, 52 U.S.C. § 20508(a)(2), and that "[e]ach State shall accept and use the mail voter registration application form *prescribed by the [EAC]*," *id.* § 20505(a)(1) (emphasis added). The NVRA does not define those terms, so the court must "look first to [their] ordinary meaning." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose") (internal quotation marks omitted). "Develop" means "to evolve (as an idea) into a clear, full, and explicit presentation." *Webster's Third New International Dictionary* 618 (1993). "Consult" means "to ask advice of" or "seek the opinion of." *See id.* at 490. And "prescribe" means to "order" or "direct." *Id.* at 1792. The meaning is thus straightforward: Congress directed the EAC

to create the Federal Form and "direct" its contents, while seeking the "advice" and "opinion" of state election officers.

The statutory context confirms this uncomplicated reading. Elsewhere in the NVRA, Congress granted States the authority to "develop" their own forms. *See* 52 U.S.C. § 20505(a)(2) ("[A] State may develop and use a mail voter registration form that meets [statutory criteria]."). These "state-developed forms may require information the Federal form does not," so long as the Federal Form is made available to those seeking to vote in federal elections. *ITCA*, 570 U.S. at 12. Thus, Congress was explicit about when States, as opposed to the EAC, may "develop" the form at issue. Congress described States' roles differently with respect to the Federal Form because those roles are, in fact, different. *See Matter of Durand-Day*, 134 F.4th 846, 855 (5th Cir. 2025) ("[T]he 'usual presumption' is 'that differences in language . . . convey differences in meaning.'") (quoting *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) (A "material variation in terms suggests a variation in meaning.").

The NVRA also sets limits on the Federal Form's contents. As relevant here, it provides that the Form "may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is *necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 52 U.S.C. § 20508(b)(1) (emphasis added). The EAC cannot "prescribe" requirements that do not comply with that limitation. Accordingly, when a State requests that a new requirement be added, the EAC must first determine whether the requirement complies with the NVRA's necessity rule—and reject proposed requirements that do not. Louisiana's reading cannot be squared with that statutory

text; "[i]t would be illogical for Congress to provide . . . that the consultant, rather than the developer, would determine 'necessity.'" *League of Women Voters v. Newby*, 838 F.3d 1, 10 (D.C. Cir. 2016).

*ITCA* confirms this reading. The Supreme Court explained that the NVRA "empowers the EAC to create the Federal Form" and "requires the EAC to prescribe its contents within specified limits." *ITCA*, 570 U.S. at 12. States "may request that the EAC alter the Federal Form to include information the State deems necessary to determine eligibility," but the EAC can "reject[]" those requests. *Id.* at 19. That allocation of authority is consistent with the statute's design. If a State could "demand of Federal Form applicants every additional piece of information the State requires on its state-specific form," the Federal Form would "cease[] to perform any meaningful function"—and it "would be a feeble means of 'increas[ing] the number of eligible citizens who register to vote in elections for Federal office.'" *Id.* at 13 (quoting 42 U.S.C. § 1973gg(b), *recodified at* 52 U.S.C. § 20501).

Other federal courts interpret the NVRA the same way. After *ITCA*, Arizona and Kansas filed an APA suit advancing nearly identical claims to those brought here. *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014). Like Louisiana, those States alleged that the EAC was "under a nondiscretionary duty to modify the [s]tate-specific instructions" by approving States' requests to add documentary proof-of-citizenship requirements, and any contrary reading "would be in excess of" the EAC's "statutory authority." Complaint, *Kobach v. U.S. Election Assistance Comm'n*, 5:13-cv-04095-EFM-TJJ, 2013 WL 4442026 (D. Kan. Aug. 21, 2013). Rejecting those arguments, the Tenth Circuit confirmed that "[t]he EAC *does have* discretion to reject such requests." *Kobach*, 772 F.3d at 1196 (emphasis added). Indeed, the Supreme Court's use of the word "request" "would make no sense if the EAC's duty was

nondiscretionary." *Id.* The D.C. Circuit reached the same conclusion, holding that the "Commission, not the states, determines necessity." *Newby*, 838 F.3d at 10. As that court reasoned, "[i]f Congress intended to give the states the power to decide what information the Federal Form contains, then it would have had little reason to include this separate permission for states to use their own forms." *Id.*

No reading of the NVRA supports Plaintiffs' argument that the EAC lacked statutory authority to reject Louisiana's request. Louisiana's interpretation would "eviscerate" the Federal Form's purpose of simplifying the registration process and providing a backstop to state registration forms, *Kobach*, 772 F.3d at 1195. Because the NVRA plainly authorizes the EAC to act as it did, Louisiana's § 706(2)(C) claim must be dismissed. *City of Arlington*, 569 U.S. at 298.

**B. The EAC did not "unlawfully withhold" its approval (Count I).**

Louisiana's § 706(1) claim—alleging that the EAC "unlawfully withheld" its approval—rests on the same false premise: that Louisiana's request to the EAC was a formality, and the EAC was bound to approve it. *See* Compl. ¶¶ 51–63. That claim fails twice over. First, because the NVRA empowers the EAC to determine the Federal Form's contents, the EAC was not legally required to approve Louisiana's proposal. Second, the EAC did not fail to act; it *denied* Louisiana's request. Section 706(1) provides an avenue to address inaction, not to challenge an adverse decision.

**1. The EAC was not legally required to approve Louisiana's requests.**

Section 706(1) provides a narrow avenue for relief: "[a] court's authority to compel agency action is limited to instances where an agency ignored a specific, unequivocal command in a federal statute or binding regulation." *Cheejati v. Blinken*, 106 F.4th 388, 396 (5th Cir. 2024) (quoting *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023)). In short, "the only agency action that can be compelled under the APA is action legally *required*."

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("*SUWA*"). Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64.

As a matter of law, Louisiana cannot satisfy that test. Both the text of the NVRA and the Supreme Court's treatment of it in *ITCA* confirm that the NVRA empowers the EAC to prescribe the contents of the Federal Form—and has discretion to accept or reject States' requests to add new registration requirements. *See supra* § I.A.

The EAC's discretion is not unlimited. As the Court explained in *ITCA*, if a State establishes in court that a proposed requirement is necessary to enforce voter qualifications, the EAC may *then* have a non-discretionary duty to approve it. *ITCA*, 570 U.S. at 20 (noting that a State could seek "to establish in a reviewing court that a mere oath will not suffice to effectuate its citizenship requirement and that the EAC is therefore under a nondiscretionary duty to include [the proposed requirement] on the Federal Form"); *see infra* § II. But Louisiana does not base its allegation that the EAC has a non-discretionary duty on any plan to *prove* before this Court that the new requirements are in fact necessary. Instead, it treats Louisiana's *own* determination that its proposed requirements are necessary as sufficient, by itself, to create a nondiscretionary duty on the EAC. Both the NVRA and *ITCA* foreclose that theory.

Because the EAC was not required by law to grant Louisiana's requests, Louisiana's claim that it "unlawfully" withheld its approval must be dismissed. *See Cheejati*, 106 F.4th at 396 (remanding with instructions to dismiss § 706(1) claim where plaintiffs did not "sufficiently allege[] that any binding authority *requires* [agency] to adjudicate applications . . . differently than it is currently adjudicating them") (emphasis added); *Louisiana v. United States*, 948 F.3d 317,

323 (5th Cir. 2020) (finding that Louisiana's § 706(1) claim "ha[d] no merit" because the relevant statute did not "require" the action Louisiana sought to compel).

**2. The EAC did not "withhold" action.**

Louisiana's § 706(1) claim independently fails for a separate reason: The EAC did not fail to act. Section 706(1) provides an avenue for relief only when an agency takes *no* action. But "[a] 'failure to act' is not the same thing as a 'denial.'" *SUWA*, 542 U.S. at 63. A failure to act is "the omission of an action without formally rejecting a request." *Id.* A denial "is the agency's act of saying no." *Id.*

This was a denial. As the EAC's Executive Director explained in her letter to Secretary Landry, because a majority of the EAC Commissioners did not vote to grant Louisiana's request, the EAC was required to "reject the request to amend the Louisiana state-specific instructions." Compl. Ex. 11 at 6.

Louisiana concedes the point. Even the Complaint acknowledges that the EAC "reject[ed]" its request. Compl. ¶ 62. That forecloses Plaintiffs' § 706(1) claim as a matter of law. *See Prysmian Cables & Sys. USA, LLC v. United States*, 756 F. Supp. 3d 1337, 1342 (Ct. Int'l Trade 2025) (dismissing § 706(1) claim where plaintiff did "not deny [the department] rendered a decision" but "only t[ook] issue with how [it] did so"); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010) ("Had the Forest Service failed to establish a boundary *at all*, plaintiffs might have a case for § 706(1) review, but we have no basis for compelling the Forest Service to adopt HCPC's *preferred* boundary.") (emphasis added); *see also id.* (finding that, where an agency denied the request at issue, the appropriate challenge would be "a claim that the [agency's] determination was 'arbitrary and capricious,'" not to compel agency action).

## II. The NVRA is constitutional (Counts III and IV).

Unable to rewrite the NVRA, Louisiana seeks to invalidate it, arguing that Congress had no authority to enact the provisions that doom most of its claims. Louisiana first alleges that if the NVRA does empower the EAC to reject Louisiana's requests to add new requirements to the Federal Form, that would "exceed[] the scope of Congress' and the EAC's authority" under the U.S. Constitution. Compl. ¶ 82 (citing 5 U.S.C. § 706(2)(B)); *see id.* ¶¶ 82–84; *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979) (explaining that claims under § 706(2)(B) are assessed the same as if they were brought directly under the Constitution).[5] Louisiana separately asserts that Congress exceeded its authority by providing that the Federal Form "may require only such identifying information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." Compl. ¶ 88 (citing 52 U.S.C. § 20508); *see id.* ¶¶ 85–91. Both claims fail for the same reason: Congress did not exceed its authority in enacting those provisions, and *ITCA* straightforwardly explains why. Indeed, *ITCA* devotes substantial attention to explaining that the necessity requirement and the EAC's authority to enforce it are *not* unconstitutional. *See* 570 U.S. at 17–20.

The NVRA was passed under the Elections Clause, which empowers Congress to regulate the time, place, and manner of federal congressional elections. *Id.* at 8–9, 15. Its "substantive scope is broad": the terms "time, place, and manner" encompass authority to "provide a complete code

---

[5] This motion addresses § 706(2)(B) separate from § 706(2)(A) because "[e]ach paragraph under § 706(2) represents a separate cause of action." *Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, No. 5:24-CV-05085-ECS, 2025 WL 2783499, at *9 (D.S.D. Sept. 30, 2025).

for congressional elections"—including by regulating voter registration. *Id.* at 8–9 (quoting *Smiley v. Holm*, 285 U.S. 355, 366 (1932)).

As a default, the Elections Clause assigns States the duty to prescribe regulations for federal elections, but it "confers" on Congress "the power to alter those regulations or supplant them altogether." *Id.* at 8; *accord Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013) (explaining that where a state election law conflicts with a valid exercise of congressional authority under the Elections Clause, "the federal legislation renders any conflicting state laws inoperative").

Accordingly, the Supreme Court in *ITCA* held that the NVRA preempted Arizona's rule imposing a documentary proof-of-citizenship requirement to register for federal elections. 570 U.S. at 14–15. As the Court explained, the NVRA is "Elections Clause legislation," which "*necessarily* displaces some element of a pre-existing legal regime erected by the States." *Id.* at 14. Because Arizona's proof-of-citizenship requirement was "inconsistent with" the limitations the NVRA imposed, "the Elections Clause require[d] that Arizona's rule give way." *Id.* at 15. That reasoning governs here: under the Elections Clause, Louisiana's entitlement to establish a citizenship qualification does not entitle it to override Congress's rules governing registration for federal elections. To the extent Louisiana's preferred registration requirements conflict with the NVRA, they must "give way." *See id.*

Louisiana asserts that Congress lacks authority here because the Constitution grants states "the constitutional right, power, and privilege of establishing voting qualifications." Compl. ¶ 87; *see also id.* ¶ 82. To be sure, under the Qualifications Clause, the power to "[p]rescrib[e] voting qualifications" belongs exclusively to the States. *ITCA*, 570 U.S. at 17 (citing The Federalist No. 60, at 371 (A. Hamilton)); *Newby*, 838 F.3d at 11. But as *ITCA* explained, States' authority to regulate "*who* may vote" in federal elections does not supplant Congress's authority to regulate

"*how* federal elections are held," *ITCA*, 570 U.S. at 16, including through "regulations relat[ed] to [voter] 'registration.'" *Id.* at 8–9 (quoting *Smiley*, 285 U.S. at 366).

*ITCA* harmonized States' powers under the Qualifications Clause with Congress's Elections Clause authority. The power to "[p]rescrib[e] voting qualifications" would be meaningless if those qualifications could not be enforced. *Id.* at 17. Therefore, it "would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information *necessary* to enforce its voter qualifications." *Id.* (emphasis added). In other words, a serious constitutional question would arise if federal law effectively *nullified* a state's voter qualifications by making them unenforceable. The Court therefore described the necessity requirement in § 20508 as "both a ceiling and a floor with respect to the contents of the Federal Form." *Id.* at 18. If, on the other hand, "the proposed change to the Federal Form" is not "'necessary' to enforce voter qualifications, then . . . the NVRA does not permit its inclusion *and the Constitution is silent*." *Newby*, 838 F.3d at 11 (emphasis added).

That does not leave States without a "means of enforcing [their] constitutional power to determine voting qualifications." *ITCA*, 570 U.S. at 19. They may request that the EAC add whatever requirements they believe are necessary to enforcing their qualifications, and if the EAC rejects them, they may file an APA suit and "establish in a reviewing court that a mere oath will not suffice to effectuate its citizenship requirement" or that denying its request was "arbitrary." *Id.* at 20. The Court concluded that since that avenue exists, the NVRA's limits on the Federal Form raise "no constitutional doubt." *Id.* at 19. That reasoning forecloses Louisiana's constitutional challenge to the necessity requirement. *See* Compl. ¶¶ 85–91 (Count IV).

Apparently recognizing the obstacle *ITCA* imposes on Count IV, Louisiana retreats to *ITCA*'s dissents to support its argument that States themselves are entitled to determine what

requirements are necessary. *See* Compl. ¶ 91. That gives away the game: "This is one of those instances in which the dissent clearly tells us what the law is not." *Kobach*, 772 F.3d at 1188; *see*, *e.g.*, *ITCA*, 570 U.S. at 46 (Alito, J., dissenting) (disagreeing with the majority opinion because the NVRA should be read to "let[] the States decide for themselves what information 'is necessary . . . to assess the eligibility of the applicant'—both by designing their own forms and by requiring that federal form applicants provide supplemental information when appropriate" (second alteration in original)); *see also* Compl. ¶ 91 (quoting *ITCA*, 570 U.S. at 46 (Alito, J., dissenting) for same). Louisiana's reliance on the dissents merely underscores that *ITCA*'s controlling opinion directly contradicts its theory. Louisiana appears to understand this. Indeed, Louisiana directly asserts that "[i]nsofar as *ITCA* held otherwise, it should be overruled." Compl. ¶ 91. This Court cannot overrule *ITCA*—and must dismiss the claims that ask it to do so.[6]

As for its constitutional challenge to the EAC's authority under Count III, *see* Compl. ¶¶ 82–84, Louisiana did file an APA suit here, as *ITCA* contemplated. But that only gets it so far. Under *ITCA's* plain terms, Louisiana must still establish in court that the existing oath-of-citizenship is insufficient *before* any nondiscretionary duty arises. *See* 570 U.S. at 20. As explained *supra* § I.B.1, Louisiana seeks to skip that step, arguing that the Constitution requires the EAC to

[6] Louisiana's only remaining argument on the necessity requirement is a misguided analogy to the Second and Fourteenth Amendments, where Plaintiffs ask this Court to treat the Elections Clause as a guarantee against governmental "intrusion," such that the federal requirement is itself unconstitutional. Compl. ¶ 89. That comparison fails at the threshold. The Second and Fourteenth Amendments constrain what the government may do to individuals; the Elections Clause defines the scope of Congress's authority over federal elections. *See* U.S. Const. art. 1, § 4, cl. 1; *Smiley*, 285 U.S. at 366. Grafting one framework onto another is not an argument—it is an admission that Plaintiffs have none. Congress's ability to impose procedural requirements for federal elections raises a fundamentally different question than laws alleged to burden individual rights, and Plaintiffs' policy preferences cannot paper over that distinction. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986) (distinguishing between election regulations and laws that abridge fundamental rights). Ultimately, what Plaintiffs characterize as an unlawful "intrusion" is the Constitution working as the Framers intended. Compl. ¶ 89.

adopt Louisiana's proposal based on Louisiana's own assessment. *See, e.g.*, Compl. ¶ 82 (alleging that the EAC exceeds its authority when it "den[ies] a State from requesting information it . . . determined was necessary"); *see also id.* ¶¶ 77–84 (Count III); ¶¶ 85–91 (Count IV).

Louisiana's bare assertion of necessity does not establish a constitutional violation. *See* Compl. ¶ 82. As the Tenth Circuit in *Kobach* explained in rejecting the same argument, a state's mere "averment that [its] requested text is necessary" is not "sufficient to impose a nondiscretionary duty on the EAC." *Kobach*, 772 F.3d at 1196. Any other conclusion would be "inconsistent with the Supreme Court's statements that states must 'request' (rather than direct) the EAC to include the requested text, and must 'establish' (rather than merely aver) their need for it." *Id.* Louisiana cannot short-circuit *ITCA* by pretending it is already entitled to relief without making the showing that *ITCA* requires.

## CONCLUSION

Because Counts I, III, and IV are foreclosed by the text of the NVRA and controlling precedent, Proposed Intervenor respectfully requests that the Court dismiss them. Louisiana may then attempt to prove its arbitrary-and-capricious claim after the administrative record has been produced. *See* Compl. ¶¶ 64–76 (Count II); *ITCA*, 570 U.S. at 20.

Respectfully submitted this 17th day of August, 2026.

s/ *William Most*

William Most
**Most & Associates LLP**
201 St. Charles Ave, Suite 2500
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com

s/ *David R. Fox*

David R. Fox*
Katie Chamblee-Ryan*
James J. Pinchak*
Tori A. Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 948-1135
dfox@elias.law
kchambleeryan@elias.law
jpinchak@elias.law
tshaw@elias.law

* Admitted *Pro hac vice*

*Counsel for Proposed Intervenor the National Council of Jewish Women – Greater New Orleans Chapter*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system.

*s/ William Most*
Counsel for Proposed Intervenor the National Council of Jewish Women – Greater New Orleans Chapter