**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **STATE OF LOUISIANA ET AL** | **CASE NO. 3:26-CV-01191** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **U S ELECTION ASSISTANCE COMMISSION ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court are several Motions to Intervene [Doc. Nos. 3, 4, 21, and 46] filed in this proceeding.

League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, Voice of the Experienced, National Association for the Advancement of Colored People Louisiana State Conference, Power Coalition for Equity and Justice, League of Women Voters of the United States, and League of Women Voters Education Fund (collectively, "League Intervenors") filed a Motion to Intervene [Doc. No. 3]. An opposition [Doc. No. 65] was filed by Plaintiffs, the State of Louisiana and Nancy Landry (collectively, "Plaintiffs"), and a reply [Doc. No. 67] was filed by League Intervenors.

National Council of Jewish Women, Greater New Orleans Chapter ("NCJW") filed a Motion to Intervene [Doc. No. 4]. Plaintiffs filed an opposition [Doc. No. 65].

Public Interest Legal Foundation ("PILF") filed a Motion to Intervene [Doc. No. 21]. No opposition has been filed to this Motion.

Finally, the Republican National Committee and the Republican Party of

Louisiana (collectively, "Republican Intervenors") filed a Motion to Intervene [Doc. No. 46]. No opposition has been filed to this Motion.

For the reasons set forth herein, all Motions to Intervene are **DENIED**. However, all movants are allowed to file *amicus curiae* briefs regarding the issues in this case in accordance with the briefing deadlines that will be set in this case.

## I. Background

### A. The Legislative and Administrative Background

Seeking "to establish procedures [to] increase the number of eligible citizens who register to vote in elections for Federal office," Congress passed the National Voter Registration Act ("NVRA"). Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at 52 U.S.C. § 20501 *et seq*.). The NVRA, among other things, allowed for the creation of the Federal Form, and designated the Federal Election Commission to develop and maintain the Federal Form, "in consultation with the chief election officers of the States." 52 U.S.C. § 20508(a)(2). The NVRA further provided that the Federal Form specify the citizenship requirement for registration and require each applicant to attest to their citizenship status under penalty of perjury. 52 U.S.C. § 20508(b)(2).

Congress later delegated authority over the Federal Form to the Election Assistance Commission ("EAC"). Help America Vote Act of 2002 ("HAVA"), Pub. L. 107-252, Title VIII, § 802, 116 Stat. 1666, 1726 (Oct. 29, 2002). The EAC is composed of four members, with a limit of two members belonging to the same political party. 52 U.S.C. § 20923(a). Pursuant to their constitutional duty and the statutory scheme

governing federal elections, states monitor voter eligibility and certify the legitimacy of their voter rolls. 11 C.F.R. § 9428.6. Proposed changes to a state's voter eligibility requirements and requests to alter the state-specific instructions on the Federal Form to reflect a state's voter qualification and registration laws must be submitted to the EAC. If the changes comport with the NVRA, the EAC must develop the change as a proposed rule. 52 U.S.C. § 20508(a)(2). Actions like adjusting the state-specific instructions on the Federal Form may be adopted by the EAC only with the approval of at least three members. *Id.* § 20928.

Act 500, enacted in 2024 by the Louisiana Legislature, required applicants for voter registration to "include with his application proof of United States citizenship." Act 500, 2024 Reg. Sess. (La. 2024) (S.B. 436), codified as La. R.S. 18:102(A)(3) & (D)(2). In seeking to implement Act 500 and pursuant to federal regulation, the Louisiana Department of State requested modification to the Louisiana-specific instructions on the Federal Form.[1] 11 C.F.R. § 9428.6. The EAC rejected Louisiana's request to amend the state-specific instructions on the Federal Form.[2]

Unable to fully implement Act 500, Plaintiffs sued the EAC and its Executive Director in her official capacity (collectively, "Defendants") for violations of various provisions of the Administrative Procedure Act ("APA") and seeks a declaration from this Court that the statute under which the EAC acted is unconstitutional rendering the agency's actions *ultra vires*.[3]

---

[1] [Doc. No. 1-4].
[2] [Doc. No. 1, p. 14].
[3] [Id. at pp. 23–25].

### B. The Movants

Many parties seek to intervene. Each movant contends that it satisfies the criteria for intervention by right under Federal Rule of Civil Procedure 24(a)(2) and, in the alternative, that permissive intervention is warranted under Rule 24(b). FED. R. CIV. P. 24(a)(2), 24(b).

The League Intervenors are "civic organizations that regularly register Louisiana voters."[4] They aver that their members would be subject to the proof of citizenship requirements under Act 500.[5] Similarly, "one of the core services" provided by NCJW is "voter registration assistance."[6] It similarly fears that its members and the population it serves "are likely to face additional scrutiny under Plaintiffs' requested changes."[7] Both the League Intervenors and NCJW are parties in a lawsuit in the Middle District of Louisiana challenging the lawfulness of Act 500.[8]

PILF advocates for election integrity and "has spent the last decade-plus cataloging the failure of the Federal Form's citizenship attestation."[9] Finally, Republican Intervenors maintain that they are "harm[ed]" by the EAC's decision because they "rely on accurate voter rolls to conduct their regular activities, turn out Republican voters, and elect Republican candidates."[10]

---

[4] [Doc. No. 3-1, p. 15].
[5] [Id.].
[6] [Doc. No. 4, p. 7].
[7] [Id.].
[8] *See League of Women Voters of La. v. Landry*, No. 3:25-cv-00413 (M.D. La.). The League of Women Voters of the United States, one organization that is part of the League Intervenors, is not part of the litigation in the Middle District of Louisiana.
[9] [Doc. No. 21-1, p. 2].
[10] [Doc. No. 46-1, p. 1].

## II. Legal Standard

Rule 24 allows certain parties to intervene by right. FED. R. CIV. P. 24(a). If the right to intervene is not explicitly granted by a federal statute,[11] a party still has the right to intervene if it satisfies the four elements of Rule 24(a)(2):

> (1) the application for intervention must be timely;
> (2) the applicant must have an interest relating to the property or transaction which is the subject of the action;
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]
> (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015); FED. R. CIV. P. 24(a)(2). It is the movant's burden to establish the right to intervene, but "Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). The Fifth Circuit has a "broad policy favoring intervention" and has repeatedly observed that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be attained." *AbbVie, Inc. v. Murrill*, 166 F.4th 528, 547 (5th Cir. 2026) (first quoting *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016); and then quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). At this stage, the court takes the movants' factual allegations as true. *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977).

If intervention of right is unavailable, courts may grant permissive intervention under Rule 24(b). FED. R. CIV. P. 24(b). If the motion to intervene is timely, courts "may permit anyone to intervene who . . . has a claim or defense that

[11] FED. R. CIV. P. Rule 24(a)(1).

shares with the main action a common question of law or fact" and such intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* "Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *S.E.C. v. Stanford Int'l Bank, Ltd.*, 429 F. App'x. 379, 382 (5th Cir. 2011) (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987)). In other words, permissive intervention "may be denied even when the requirements of Rule 24(b) are satisfied." *Louisiana v. Burgum*, 132 F.4th 918, 923 (5th Cir. 2025) (quoting *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021)).

## III. Law and Analysis

### A. Intervention of Right

All movants maintain they meet all four requirements for intervention of right under Rule 24(a)(2), though none claim a right under Rule 24(a)(1).[12]

#### i. Timeliness

Since the timeliness inquiry is not as movant-specific as the other factors and the movants filed their Motions in quick succession, the Court will analyze this factor for all movants.

Whether intervention is timely is a case-by-case determination. *Wal-Mart Stores*, 834 F.3d at 565. Timeliness "is not a word of exactitude or of precisely measurable dimensions," but the Fifth Circuit has identified four factors, often

[12] [Doc. No. 3, pp. 2–5]; [Doc. No. 4, pp. 1–3]; [Doc. No. 21, p. 1]; [Doc. No. 46, p. 1].

referred to as the "*Stallworth* factors" to guide the court's determination. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1971). These factors include:

> (1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances.

*United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)). Of the four *Stallworth* factors, the second—prejudice to the existing parties if the motions to intervene are delayed—is "the 'most important consideration.'" *Rotstain v. Mendez*, 986 F.3d 931 (5th Cir. 2021) (quoting *McDonald*, 430 F.2d at 1073).

All movants filed their Motions before the onset of discovery—even before the Defendants' Answer. Courts have granted intervention even when requested a year after the complaint. *See, e.g.*, *Smith Petroleum Serv., Inc. v. Monsanto Chem. Co.*, 420 F.2d 1103, 1115–16 (5th Cir. 1970). The Fifth Circuit has also indicated that a motion to intervene before discovery is unlikely to constitute a delayed filing. *See Wal-Mart Stores*, 834 F.3d at 565–66 ("Because the [movant] sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the [movant's] motion was timely."). Therefore, this Court finds that the movants did not delay in filing their Motions for Intervention. Finding that there was no delay, then there was, by definition, no prejudice to the existing parties with respect to the timing of the Motions for Intervention. Therefore, the first two factors are resolved in favor of the movants.

The third factor—prejudice to the would-be intervenors if intervention is

denied—to some degree overlaps with the broader Rule 24(a) factors. Indeed, the Fifth Circuit has held that "critical to the third *Stallworth* inquiry is adequacy of representation. If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight." *Rotstain*, 986 F.3d at 939 (quoting *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983)). Ultimately, assuming *arguendo* that there would be no prejudice to the movants, the first two factors are enough to resolve the timeliness balancing test in favor of the movants. Finally, there are no unusual circumstances that militate for or against granting intervention.

In sum, each movant satisfies the first prong of the Rule 24(a) inquiry.

**ii. League Intervenors and NCJW**

League Intervenors and NCJW are similarly situated and will be analyzed in tandem. To intervene by right, the parties must claim, "an interest relating to the property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). "The precise definition of an 'interest' has been hard to pin down." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). However, it is well-established that an "interest" for purposes of the rule requires a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 463 (5th Cir. 1984)). While property interests are the "quintessential rights Rule 24(a) protects," the Fifth Circuit does not require movants "possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2)." *La Union*, 29 F.4th at 305 (quoting *Mothersill D.I.S.C. Corp. v. Petroleos*

*Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987)). Finally, a "legally protectable" interest does not mean that the interest must be "legally *enforceable*." *Texas*, 805 F.3d at 659. "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.*

Given the polysemous nature of the operative word "interest," it bears repeating that the movants' interest must be *legally protectable*; a "generalized preference that the case come out a certain way" does not satisfy this prong of Rule 24(a). *Texas*, 805 F.3d at 657. All intervenors, by virtue of undertaking the work to file a motion to intervene, are likely *interested* in the litigation; however, this interest, the Fifth Circuit often admonishes, must be "direct, substantial, [and] legally protectable." *La Union*, 29 F.4th at 305 (quoting *Edwards*, 78 F.3d at 995).

League Intervenors set forth a number of purported interests in the litigation. First, they contend that "[t]heir registration assistance is impaired by Act 500's introduction of additional proof of citizenship requirements."[13] Second, they assert "an interest in ensuring that Louisiana, along with other states across the country, cannot impose burdensome voter registration requirements not permitted by federal law."[14] Third, "League Intervenors have an interest in parallel litigation directly responsive to the litigation they have brought."[15]

NCJW posits similar interests. It explains that "[r]equiring registrants to

---

[13] [Doc. No. 3-1, p. 15].
[14] [Id. at 16].
[15] [Doc. No. 3-1, p. 19].

provide even more information than what is currently required by the federal voting registration form will make it impossible for NCJW to register voters at its current rate."[16] Further, the additional requirements to the federal voter registration form will require the organization to expend "additional resources toward helping registrants find the newly required information."[17] Next, NCJW argues that its "members—who may be unable to register to vote should Plaintiffs be granted relief"—have an interest because "voters have significantly protectable interests in preserving their constitutional right to vote."[18] Finally, NCJW argues that it has an interest in the litigation due to its potential *stare decisis* effects on the litigation in the Middle District and elsewhere.

Before considering analogous Fifth Circuit cases, it is worth disposing of a few of the asserted interests. First, the mere fact that some of the proposed intervenors are parties in a related lawsuit in a sister district does not supply a direct and substantial interest in *this* litigation. Second and relatedly, while *stare decisis* is sometimes considered in the third prong of this analysis, it does not serve as an independent "interest" in the subject of this action for purposes of Rule 24(a)(2). District courts are not bound by the decisions of other district courts, so the decision of this Court will not have binding force in future cases. Nor does the potential "chilling effect" of an outcome advantageous to Plaintiffs provide a legally protectable interest.[19] The potential precedential effects of an adverse ruling are too indirect; if

---

[16] [Doc. No. 4, p. 15].
[17] [Id. at p. 16].
[18] [Id. at pp. 16–17].
[19] [Doc. No. 3-1, p. 21].

concerns that an adverse precedent would impair an organization's functions constituted an "interest" for purposes of intervention of right, then there would be no bounds to the analysis. As the Fifth Circuit stated, "an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Texas*, 805 F.3d at 657. Third, in articulating their interest in this suit, NCJW states that it "has significantly protectable organizational interests in ensuring that its voter registration drives continue to function at its current levels."[20] This framing of their interest proves too much. Indeed, any public policy—from a reduction in the citywide speed limit to an environmental regulation that has the downstream effect of increasing the cost of paper—risks reducing NCJW's ability to function *at its current level*. The type of interest needed for Rule 24(a)(2) intervention must be more direct. Fourth, to the extent that NCJW seeks to cast its interest as "the right to vote," the Court rejects its arguments.[21] Framing the subject matter of this suit as whether people have the right to vote casts the matter at too high a level of generality and, if this type of framing were accepted, would allow virtually limitless intervention because, as the NCJW itself admits, all "voters have significantly protectable interests in preserving their constitutional right to vote."[22]

The interest that remains has been articulated in various ways by League Intervenors and NCJW. In its most simple form, "expand[ing] democratic

---

[20] [Doc. No. 4, p. 15].
[21] [Id.].
[22] [Id. at p. 16].

participation through voter registration" is part of the missions of the League Intervenors and NCJW.[23] These organizations fear Act 500 will hinder their voter registration efforts and are ideologically opposed to the legislation.

The inquiry under "subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards*, 78 F.3d at 999 (quoting *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir.1991)). As the Fifth Circuit vividly described the inquiry, "intervention of right must be measured by a practical rather than technical yardstick." *Id.* The inquiry is fact-intensive, and the Court must seek recourse in analogous cases to guide what is a vague standard. A review of precedent shows that this remaining proposed interest is not "concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658.

In *City of Houston v. American Traffic Solutions*, the Fifth Circuit warned that courts "must be circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial efficiency." 668 F.3d 291, 294 (5th Cir. 2012). In that case, the Fifth Circuit reversed the lower court's denial of intervention of right because the proposed intervenors were "unique" because they "engineered the drive" that led to the revocation of the contract between the main parties in the lawsuit. *Id.* The intervenors initiated, personally funded, and organized the very basis for the lawsuit. *Id.* at 292. Moreover, there were "substantial doubts" about the City's ability to protect their interest given "the City's pecuniary motives" which bore heavily on the

[23] [Doc. No. 3-1, p. 16].

analysis. *Id.* at 294. Conversely, the proposed intervenors had nothing to do with the subject of this action—namely, the EAC's agency action. The centrality of the "political campaign" to the underlying lawsuit initiated by the proposed intervenors in *City of Houston* overcame the Court's normal "circumspect[ion]" when public spirited civic organizations seek to intervene. *Id.* at 292, 294. The would-be intervenors here have played no such crucial role in the dispute between the named parties.

In *Texas v. United States Department of Interior*, conservation groups sought to intervene to preserve a listing rule. 192 F.4th 320 (5th Cir. 2026). They had a sufficient interest in the litigation because they "petitioned for and litigated to promulgate" the rule that served as the basis of the action. *Id.* at 337. Once again, the proposed intervenors have no such direct, concrete, and personal connection to the subject of the action. They have an interest in the action for "ideological" and "precedential reasons" and would "*prefer*[] one outcome" but these reasons are insufficient for purposes of intervention of right. *Texas*, 805 F.3d at 657.

In *Sierra Club v. Espy*, a district court's preliminary injunction against even-aged logging led the U.S. Forest Service to adopt a policy severely restricting logging in the four national forests in Texas. 18 F.3d 1202 (5th Cir. 1994). Two trade associations "representing most of the purchasers of timber from the Texas national forests" were denied intervention as a matter of right by the district court. *Id.* at 1203. A divided Fifth Circuit panel reversed the district court's denial of intervention finding that the associations' "member companies have legally protectable property

interests in existing timber contracts that are threatened" by the Forest Service's policy. Similarly in *Field v. Anadarko Petroleum Corporation*, intervention was granted as of right because an adverse outcome would "destroy [the proposed intervenors] business model." 35 F.4th 1013, 1016 (5th Cir. 2022). Likewise in *In re Lease Oil Antitrust Litigation*, intervention was granted because of the state's property interest in the disputed funds. 570 F.3d 244 (5th Cir. 2009). These vested property interests are unlike the ideological interests asserted by the intervenors before this Court.

In *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, Wal-Mart challenged a state rule limiting retail sale of liquor for off-premises consumption to package store permit holders. 834 F.3d 562 (5th Cir. 2016). Wal-Mart alleged that the regulatory regime impermissibly privileged members of the proposed intervenor, the Texas Package Stores Association. *Id.* at 565. The Fifth Circuit found that the association had a legally protectable interest in the subject of the litigation—the regulatory scheme—because the whole point of the lawsuit was that the Association was the scheme's beneficiary. *Id.* at 566–67. The intervening Association's substantial interest in the regulatory scheme is unlike any purported interest tendered by the movants in this action.

Finally, the Court considers *La Union*, a case that is heavily relied on by the proposed intervenors and is the most factually analogous to the case at bar. In *La Union*, the proposed intervenors—various groups formally associated with the Republican Party—sought to intervene in a challenge to Texas's enactment of an

omnibus voting bill. 29 F.4th at 304. The Fifth Circuit reversed the district court's determination that the intervenors failed to "demonstrate a cognizable interest." *La Union Del Pueblo Entero v.* Abbott, No. 21-CV-844, 2021 WL 5410517, at *2 (W.D. Tex. Nov. 18, 2021). *La Union* is distinguishable from the case before this Court. The legislation before the Court in *La Union* "squarely regulate[d] the conduct" of the intervenors. *La Union*, 29 F.4th at 307. The outcome of the lawsuit would "change what the [intervenors] must do to prepare for upcoming elections" not in some nebulous, attenuated, or self-inflicted sense but because the legislation directly regulated their conduct. *Id.* The extent to which the legislation at bar regulates the conduct of the League Intervenors and NCJW is the extent to which it regulates the conduct of *all* voters seeking to register to vote. This type of diffuse regulation of conduct is easily distinguishable from the direct and substantial regulation at play in *La Union*.[24]

[24] There are many cases where more direct and substantial interests than the ones proposed by the League Intervenors and NCJW were deemed too speculative for purposes of Rule 24(a)(2). *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. Nov. 1, 2012) (denying intervention to a firm who was bound by a similar contract with the defendant as the one in the case); *NOPSI*, 732 F.2d at 454–55 (denying intervention to residents of New Orleans in a fuel-pricing dispute between a utility company and an energy company because the interest of preventing higher electricity rates was too speculative); *Adams v. Consol. Wood Prods. Emp. Benefit Plan*, 2011 WL 665821 at *4 (E.D. Tex., Feb. 14, 2011) (Grandfather filed a claim against his employer's ERISA plan, and the grandson, who was not covered by the plan, attempted to intervene because the employer's total insurance was capped at $1 million, such that any ERISA payment for the grandfather would limit the insurance money available to pay off the grandson's separate negligence suit. Even though the lawsuit would have a significant economic impact on the grandson, the Court denied intervention because the interest was too speculative.); *Donaldson v. United States*, 91 S. Ct. 534, 541–42 (1971) (Taxpayer could not intervene in a suit by the IRS to subpoena records of taxpayer's former employer.); *Ctr. of Biological Diversity v. U.S. E.P.A.*, 274 F.R.D. 305, 311 (D.D.C. April 11, 2011) (denying intervention to organizations representing manufacturers, operators of aircraft components and aircraft engineers for having too attenuated of an interest in a lawsuit where environmental organizations sued to compel the EPA to regulate by marine vessels and aircraft.). *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (A company's interest in the collateral estoppel effect of the action was not a sufficient interest in the action to support intervention of right.); *Horton v. Lawrence County Bd. of Educ.*, 425 F.2d 735, 735–36 (5th

A "[f]ailure to satisfy any one requirement precludes intervention of right." *Edwards*, 78 F.3d at 999. As such, the failure of League Intervenors and NCJW to present a protectable legal interest in the subject of this litigation ends the inquiry.

**iii. PILF**

PILF's purported interest in the action is essentially one of resource allocation. As an organization that "has spent the last decade-plus cataloging the failure of the Federal Form's citizenship attestation and its damaging effect on immigrants," it argues that "[i]f successful, Louisiana's efforts will unburden the Foundation." Instead, the organization can "spen[d]" its "time and money" "elsewhere if the problem is solved."[25]

A straightforward reading of PILF's posited interest in the action sounds in economic terms—that is, barring a favorable outcome, the organization would have to continue devoting its resources to Louisiana. However, "something more than an economic interest is necessary" to satisfy the interest requirement for intervention of right. *NOPSI*, 732 F.2d at 464. Construing PILF's arguments in more missional or ideological terms—that is, PILF has an organizational interest in "protecting the integrity of the electoral process"—is similarly unavailing.[26] These indirect ideological interests are insufficient for purposes of Rule 24(a)(2). Similar to League Intervenors and NCJW, "an intervenor fails to show a sufficient interest when he

Cir. 1970) (A nationwide professional association of teachers did not show such interest as to entitle it to intervene as a matter of right to protect the interest of black teacher members in a school desegregation case.).

[25] [Doc. No. 21-1, pp. 2, 4].

[26] [Doc. No. 21-2, p. 4].

seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Texas*, 805 F.3d at 657. For these reasons, PILF fails to show a legally protectable interest and thus, fails the Rule 24(a)(2) intervention test.

**iv. Republican Intervenors**

Republican Intervenors similarly fail the Rule 24(a)(2) test. However, they will be analyzed under the fourth prong: the requirement that an applicant's interest be inadequately represented by the existing parties to the suit. As with the other prongs of the Rule 24(a)(2) analysis, "[t]he burden of establishing inadequate representation is on the applicant for intervention." *Edwards*, 78 F.3d at 1005. However, the applicant "need not show that the representation by existing parties will be, for certain, inadequate." *Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Brumfield*, 749 F.3d at 345). Instead, the movant need only show that the "representation of his interest 'may be' inadequate." *Id.* (quoting *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007)). The intervenor's burden has been characterized as "minimal," but the Fifth Circuit has also clarified that "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Cajun Elec. Power Co-op., Inc. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 120 (5th Cir. 1991) (internal quotation marks omitted). *See also Veasey v. Perry*, 577 F. App'x. 261, 263 (5th Cir. 2014) ("[T]his requirement must have some teeth.").

To make this requirement more tractable and "to guard against needless intervention," the Fifth Circuit has created two presumptions of adequate

representation that, when applicable, must be overcome by the movants. *Texas*, 192 F.4th at 337. One presumption, often referred to as the "same ultimate objective" presumption, arises when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. The other, often referred to as the "government-representative presumption," arises "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.* To overcome the same ultimate objective presumption, the applicant "must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* To overcome the government-representative presumption, the applicant must show "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Id.* (alterations in original) (quoting *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994)).

Both presumptions apply, and Republican Intervenors fail to meet their burden to overcome them. With respect to the "same ultimate objective" presumption, the Republican Intervenors argue that their "organizational interests" diverge from Plaintiffs because their "interests in the changes to the voter registration form, including its effect on voter registration and noncitizen voting, are not identical to the interests and claims pursued by the State."[27] In defending this claim, Republican Intervenors explain, "[v]oter confidence and election integrity also have a direct effect on voter turnout which is key to the Republican Party's mission to elect Republican

[27] [Doc. No. 46-1, pp. 8–9].

candidates. Meanwhile, the State seeks to 'vindicate its sovereign authority' to determine what is necessary for voting qualification and registration."[28]

Republican Intervenors fail to overcome the presumption for a few reasons. First, Plaintiffs' interest in "vindicat[ing] its sovereign authority" is not to the exclusion of its interest in "[v]oter confidence and election integrity."[29] Indeed, one aspect of sovereign authority in a representative democracy is ensuring election integrity. Second, a lack of identity of interests does not indicate inadequate representation for purposes of Rule 24(a)(2). The divergence of interests must be "in a matter germane to the case." *Texas v. Ctr. For Biological Diversity*, No. 25-51058, 2026 WL 3373128, at *2 (5th Cir. Nov. 6, 2026) (quoting *State of Texas*, 2026 WL 2672757, at *9). While Republican Intervenors point to differences in motivation—Republican Intervenors want to "win elections," an interest not pursued by Plaintiffs—and scope—the RNC's interests "extend beyond the borders of Louisiana"—these differences are not legally relevant.[30] These differences in motivation and scope are not germane to the case insofar as they will have no bearing on this Court's determination of whether the EAC violated federal law.

Perhaps most importantly, Republican Intervenors have the "same ultimate objective" as Plaintiffs: a determination that the EAC's action was unlawful. *Edwards*, 78 F.3d at 1005. Republican Intervenors fail to adequately distinguish their objective in the lawsuit from Plaintiffs. Thus, the presumption applies and can "be

[28] [Id. at p. 9].
[29] [Id.].
[30] [Id.].

rebutted if the intervenor shows an 'adversity of interest, collusion, or nonfeasance on the part of the existing party.'" *Texas*, 192 F.4th at 337 (quoting *La Union*, 29 F.4th at 308). No such showing has been made. There is no indication that Plaintiffs will not adequately pursue their shared ultimate objective on behalf of Republican Intervenors.

For much the same reasons, Republican Intervenors fail to overcome the government-representative presumption. There is no indication "that its interest is in fact different from that of the [Plaintiffs] and that the interest will not be represented by [it]." *Id.* Unlike *La Union* and *State of Texas* where the intervenors and parties diverged on critical aspects of substantive law at the heart of those cases, here, Republican Intervenors and Plaintiffs are in near-perfect alignment on matters of substantive law.

For these reasons, the Republican Intervenors are denied intervention as of right.

### B. Permissive Intervention

League Intervenors, NCJW, PILF, and Republican Intervenors have all alternatively asked this Court to allow intervention under Rule 24(b). Courts "may" allow intervention from parties with "a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). The Rules specify that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*24(b)(3). "Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are

otherwise satisfied." *Stanford Int'l*, 429 F. App'x. at 382 (quoting *Kneeland*, 806 F.2d at 1289). In other words, permissive intervention "may be denied even when the requirements of Rule 24(b) are satisfied." *Burgum*, 132 F.4th at 923 (quoting *Turner*, 9 F.4th at 317).

The League Intervenors urge this Court to allow them to intervene under Rule 24(b) because of "[t]heir distinct perspective and expertise on related litigation."[31] Both arguments lead this Court to deny intervention. First, if the League Intervenors rely on their ability to provide a "distinct perspective," the Fifth Circuit has repeatedly clarified that an *amicus* brief is the proper vehicle to present it. As the Fifth Circuit recently stated, "where 'the movants express a unique view offered by neither party' that they want 'heard,' 'the proper procedure is to move to appear as *amici curiae*, not to move to intervene." *Burgum*, 132 F.4th at 924 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)). Second, the Court fears that allowing the League Intervenors to rely on their status in related litigation will introduce collateral interests that distract from and delay the core dispute.

NCJW's request for permissive intervention fares no better. It raises similar arguments, stating that "its participation will enhance the Court's ability to resolve th[e] issues without causing any undue prejudice or delay."[32] It further states that its "participation in this case will simply ensure that a robust defense of the EAC's decision is offered."[33] The Court finds these conclusory arguments uncompelling.

[31] [Doc. No. 3, p. 2]; [Doc. No. 3-1, p. 30].
[32] [Doc. No. 4, p. 8].
[33] [Id. at p. 22].

NCJW does not explain how its participation is likely to "enhance the Court's ability to resolve" the case.[34] NCJW argues that its intervention would not cause delay "given NCJW agrees to be bound by any case schedule set by the Court."[35] It is expected that all parties before this Court—intervenors and named parties alike—will observe the case schedule. "Delay" as used in the Rules contemplates more than requests to continue or extend deadlines; it includes the introduction of collateral issues that hinder judicial economy. Any expertise the NCJW wishes to offer can be presented as *amicus curiae.*

Similarly, PILF explains that it should intervene under Rule 24(b) because it "advances similar legal theories" and it "has considerable expertise in the study and remediation of alien registration, which will provide this Court with a unique and relevant perspective."[36] The proliferation of filings advancing "similar legal theories" would be needlessly duplicative and burdensome.[37] Furthermore, as noted above, the "proper procedure" to provide the Court with a unique perspective is to move to appear as *amici curiae*, not to move to intervene. *Burgum*, 132 F.4th at 924 (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)).

Finally, the Republican Intervenors aver that their "factual allegations and claims against the EAC substantially overlap with those of the State Plaintiffs."[38] Furthermore, taking the perspective of the judiciary as a whole, Republican

---

[34] [Id. at p. 8].
[35] [Id. at p. 21].
[36] [Doc. No. 21-1, p. 7].
[37] [Id.].
[38] [Doc. No. 46-1, p. 10].

Intervenors argue that "since [they] could simply bring their own separate suit" denial of their motion would cause "greater inconvenience."[39] However, Rule 24(b)(3) directs courts to consider the delay or prejudice of intervention to "the original parties." FED. R. CIV. P. 24(b)(3). The Court has neither the expertise nor the power to arrange intervention in a manner to maximize the convenience of the judiciary; this Court can only "consider whether the intervention will unduly delay or prejudice the adjudication of the *original* parties' rights." *Id.* Here, the Court finds that intervention would unduly delay the proceeding but invites Republican Intervenors to participate as *amici curiae.*

In sum, adding the movants would necessarily complicate the litigation and consume additional resources of the court and the parties. When, as here, the putative intervenors rely chiefly on subject-matter expertise to support their arguments for intervention, the proper form to provide this expertise is the *amicus* brief, not intervention.

## IV. Conclusion

For the reasons set forth herein,

**IT IS ORDERED** that the Motions to Intervene filed by League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, Voice of the Experienced, National Association for the Advancement of Colored People Louisiana State Conference, Power Coalition for Equity and Justice, League of Women Voters of the United States, and League of Women Voters Education Fund

[39] [Id.].

[Doc. No. 3], the National Council of Jewish Women, Greater New Orleans Chapter [Doc. No. 4], the Public Interest Legal Foundation [Doc. No. 21], and the Republican National Committee and the Republican Party of Louisiana [Doc. No. 46] are **DENIED** in full.

**IT IS FURTHER ORDERED** that League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, Voice of the Experienced, National Association for the Advancement of Colored People Louisiana State Conference, Power Coalition for Equity and Justice, League of Women Voters of the United States, League of Women Voters Education Fund, the National Council of Jewish Women, Greater New Orleans Chapter, the Public Interest Legal Foundation, the Republican National Committee, and the Republican Party of Louisiana shall be allowed to file *Amicus Curiae* briefs addressing the merits of this proceeding.

MONROE, LOUISIANA, this 19th day of November, 2026.

Terry A. Doughty
United States District Judge